## GEORGE L. WILEY *vs.* ALEXANDER WILEY.

*Parole agreements concerning land; the Statute of Frauds;*
*equitable compensation.  Partnerships; laches*
*and limitations.  Witnesses; simi-*
*larity of testimony.*

By parole, A. and B. agreed to purchase a farm; B. to work
the farm jointly with A., and with the help of A.'s family
and his implements and teams; the profits, after providing
for their support, were to belong to them in equal shares, but
to be applied to the payment of the purchase money until
the whole price was paid; when the deed was to be
made out in the name of A. and B., as tenants in common;
A. was illiterate, and B. without his knowledge, took title to
the farm in his own name.  The farm was worked profitably
for many years with the help of A.'s labor and that of his
family; B. refused to account for the profits and refused to
convey to A. a half of the farm.  It was *held,* that specific
performance of the agreement could not ·be decreed because
of the Statute of Frauds, but that A. should be compensated
to the amount of his share of the profits which had been
applied to the payment of the purchase money and to perma-
nent improvements of the property, and that the partnership
relation between them should be dissolved and an accounting
decreed.                                           p. 657

Laches and limitations are not effective defences in matters of
existing partnership.                              p. 657

In the case of statements by witness, as to conversions that
occurred long years before, the want of great similarity adds
to the weight.                                     p. 653

*Decided June 22nd, 1911.*

Appeal from the Circuit Court for Garrett County (HEN-
DERSON, J.).

The case was argued before BOYD, C. J., BRISCOE,
PEARCE, PATTISON and URNER, JJ.

*D. Lindley Sloan,* for the Appellant.

*G. S. Hamil* and *R. T. Semmes,* for the Appellee.

PATTISON, J., delivered the opinion of the Court.

The facts as alleged in the appellee's bill filed in this case, in the Circuit Court for Garrett County, are substantially as follows: The appellee, plaintiff below, with his son, George Wiley, the appellant, more than twenty-one years of age and unmarried, in 1881 purchased from William R. Getty a tract of land known as the "Solomon Sibert Farm", situated in Garrett county, containing three hundred acres of land, more or less, for the sum of three thousand dollars, of which no part was to be paid in cash. The father was uneducated, could not write at all and could read printed matter only, and that with great difficulty. The preparation and execution of the contract of sale was entrusted to the care and attention of the son, the father was not present at its execution. By the written contract with Getty, the appellant became the sole purchaser of the land and by the deed thereafter executed the land was conveyed to the son alone. The sale and conveyance to the appellant was made without the knowledge of the appellee and against the agreement had with the appellant in respect thereto, and it was not until after the execution of the contract and deed that he learned of the same. The appellant later executed to the grantor, Getty, a mortgage upon the property to secure the payment of the entire sum of three thousand dollars, to be paid, as provided in the contract of sale, on or before the 23rd day of April, 1893, the interest thereon to be paid annually.

At the time of the purchase of this property Alexander Wiley, the appellee, was living with his family on a farm about one and one-half miles from the Sibert Farm. His family at that time consisted of his wife and six children, including the appellant, five of them sons and one a daughter.. The oldest of the children, not including the appellant,

was then fifteen or sixteen years of age, while the youngest was only about eight or nine years old. George, while living with his father, at times worked for others in the neighborhood. The appellee at the time had two horses, a number of cows, twenty-five or thirty sheep, and wagons, plows, harrows and other farming implements. George had no property and little or no money.

The Sibert farm being for sale, George and one Hoover considered purchasing it, but before reaching a definite conclusion, Hoover decided that he would not undertake it. It was then that George approached his father and suggested that he join him in buying it. After investigation the father consented.

The farm was purchased by them under the agreement that the entire family, the father and the six children, were to move upon the farm, take possession of, cultivate and operate it. The stock of the father was to be used thereon and the labor of himself, his wife and the five younger children was to be contributed by him as his part of the undertaking. Against this the son was to give his labor. Out of what was produced upon the farm the family was to be supported, and one-half of the net proceeds from the sale of the products was to belong to the father and one-half to the son, but the whole thereof was to be applied to the payment of the purchase money for the farm until the whole of the purchase money was paid, at which time the father and son should each hold a one-half interest in the farm.

Pursuant thereto the family moved upon the farm. The house thereon was small and would not comfortably accommodate them. Therefore, in the spring of 1883, they built a new house from timber cut from the premises, and in the building of the house they all contributed their labor. They all lived in this house until the marriage of George Wiley some ten or twelve years thereafter. "During that time the wife of the plaintiff, Martha Wiley, and his children, boys and girls, helped in the management of the farm; made sugar in the springtime from the sugar camp, butter from

the cows in the summer, and the said Martha made a great
deal of money by weaving carpets and other materials to aid
in paying the price of the farm."

Upon the marriage of George the second house was built
and when completed it was occupied by him and his wife,
the old folks still occupying the first house, but the man-
agement and operation of the farm continued as it had been
prior to George's marriage. It is in the second house that
George and his family still live, and the first is still in the
occupancy of the father and mother.

Upon this farm was a sugar camp, which seems to have
been quite profitable, producing each year several hundred
dollars. They raised upon the farm the usual farm crops,
and eggs and butter were sold therefrom. The products
were sold by George and the money therefor was received
by him, with the understanding that he was to pay over
the proceeds to William R. Getty upon the purchase money
for the farm.

The appellee did not know the amount of their earnings
or the extent of the payments upon the purchase money
made by George, but "he had the utmost confidence in his
son, and thought he would act honorably towards him in
accordance with the terms of the agreement as originally
made between them; and in consequence he never required
any account in any way for the money, although he would
frequently remind George of his obligations to render an
account of what they had jointly produced from their farm
and their labors, and always supposed that his son George
would see that his rights in the premises were protected;
and that when he would go to his son George for some satis-
faction in the matter or to get some statement George would
invariably put him 'off', with some flimsy excuse, and, know-
ing the easy disposition of his father, the plaintiff, would
very often walk off and make no reply to the plaintiff's
demand." That in addition to the money coming into the
hands of George from the sale of the farm products, he
likewise received a considerable sum of money from the sale

of timber from said lands, for which he had never accounted to the plaintiff. Nor has he accounted to the plaintiff for other moneys received by him from the sale of the products of said farm, and he refuses to make any settlement with the plaintiff, although he has repeatedly called upon him in recent years to do so, and although the title to the farm is altogether in the name of the appellant. As a result thereof the plaintiff and his wife "have been literally stripped of the means of livelihood while the said George has filled his pockets with the proceeds of said products and timber, and has actually loaned out and bought other property with the money belonging to this plaintiff."

Upon these alleged facts the plaintiff asked for the passage of "a decree requiring the defendant and his wife to convey to him the undivided moiety of three hundred acres of land, or failing in that, to pass a decree requiring the defendant to account to him for his share of the sale of timber, etc., from the said premises, and for such other and further relief as the nature of his case may require." At the conclusion of the case the bill was amended by striking out the name of Margaret Wiley as defendant, and by adding thereto a prayer for the dissolution of the partnership.

The defendant answered denying that the farm was purchased by him and his father, and also denying the existence of the alleged agreement between him and his father, the plaintiff, in respect to the purchase of said farm, alleging that the same was purchased by him under a written agreement with Getty, dated December 26th, 1881, by which he was to be the sole owner of the lands in fee, and that pursuant to such sale he took possession of the farm and has so remained in possession of the same unto this day; that on the 20th day of August, 1882, the said lands were conveyed to him by William R. Getty by deed of that date; that on the 16th day of October following he executed unto the said Getty a mortgage to secure the entire payment of the purchase money therefor, and that in accordance with the

terms of said agreement and in accordance with the terms of said mortgage he, without the assistance of his father, mother, brothers and sister, paid off said mortgage debt and all interest due thereon; and further alleging that the alleged agreement was a mere verbal agreement for the sale of lands or an interest in and concerning lands and that there was no memorandum or note of said agreement signed by the said George L. Wiley, and that such agreement is void under the fourth section of the *Statute of Frauds,* upon which statute the defendants rely and now plead the same in bar of the relief claimed by the plaintiff. He also denied that the plaintiff ever paid any part of the purchase money for said farm directly or indirectly, or that he was ever in possession of the same or any part thereof except as tenant of him, the owner. He admitted the sale of timber from the land amounting to nine hundred dollars, which he alleges he had the right to sell, he being the owner of said land. He likewise admitted the sale by him of sugar and other products from the farm, and the application of a large part thereof to the payment of the purchase money for the farm, but alleged that these too were his property and he had the right to do so without accounting to the appellee for any part thereof, as he had no interest therein or claim thereto. He likewise pleaded the Statute of Limitations.

To this answer the general replication was filed, and the learned Court below, upon hearing the evidence upon the issues joined, passed an order or decree dissolving the copartnership existing between the plaintiff and defendant, and decreeing an accounting between them. It is from this order or decree that this appeal is taken.

We have no difficulty in reaching the conclusion, from the evidence in this case, that an agreement was made by and between the appellant and the appellee to purchase the farm at the sum mentioned, and that after its purchase they were to move upon and take possession of the lands and were to operate and cultivate the same jointly, and the

net profits arising from their joint labor were to be applied to the payment of the purchase money for said lands, and when, by the application of the same, the entire purchase money was paid, the appellant and the appellee were each to have one-half undivided interest therein as tenants in common.

The existence of such an agreement is established by the testimony of the appellee, Martha Wiley, his wife; Mrs. Doolittle, his daughter, and his two sons, Harry and Jacob Wiley. And the appellant by his own testimony admits that the purchase of this land jointly with his father was considered and discussed by them on a number of occasions, and not until the day of the consummation of the sale did his father determine not to join him in its purchase. He testified that after several conversations, more particularly with his mother, in relation to the purchase of this farm jointly by himself and father, that he, before going off to work, told her that "the articles of agreement" were to be drawn up inside of a week or ten days from that time. That they could study over it and if they wanted to take a share in it he would be home the day before the agreement was to be made. That in about a week from that time he returned to his father's home and said to them that the agreement was to be drawn up the next day, Saturday, and if his father wanted to go along they could go and they would fix up the paper. "He (the father) spoke up and said he was sick and not able to go. He said go and have it fixed up for yourself." That he went to Mr. Getty and told him what his father said. The paper was then drawn up by Mr. Getty and they each signed it.

But notwithstanding the father's alleged refusal to join him in the purchase of the farm, we find the appellee a short time thereafter with his family moving to the Sibert farm, carrying with him all his stock and farming implements, and with the appellant, his son, taking possession of the farm. Thereafter, as the record abundantly discloses, not only did he (the appellee) himself work upon the farm,

but his wife, sons and daughter also. The wife and daughter did the entire cooking and washing for the family, as well as for the hired man upon the farm, and at times they worked in the sugar camp and in the fields. The appellee with his younger sons and the appellant cultivated the crops and also worked in the sugar camp, for which the appellant, his wife, sons and daughter were paid nothing, more than on a few occasions the appellant gave to his father and mother a few dollars to meet urgent needs. The crops when cultivated, as well as the sugar made at the camp, and the butter made by the wife were sold by George, and the money received by him, and after paying therefrom the costs and expenses incurred in the cultivation of the crops and the production of the sugar, etc., and after the payment of a part of the same for the purchase of supplies for the family, the balance, representing the net profits arising from their labor, was retained by him and, as he states, paid over to Getty upon the purchase money for the farm, for which there has never been any accounting by the appellant to the appellee.

The criticism has been made by the appellant "that no two of the witnesses (offered to prove the agreement) agreed about it". It will be borne in mind that the statements were made by the witnesses more than twenty-five years after the conversation occurred. Thus it is not expected that the statements made by them, each giving the conversation as he or she recalled it, should in no wise have been dissimilar. Under the circumstances, the want of greater similiarity adds weight to the testimony.

It is contended, however, by the appellant that the agreement above set forth, although if found to exist, is within the fourth section of the *Statute of Frauds,* and as a result thereof, the appellee is not entitled to the relief sought by him in this case.

In the case of *Green v. Drummond,* 31 Md. 78, the allegation in the bill was that Green and Drummond agreed to become jointly the purchasers of property, each party to

furnish one-half of the purchase money and to hold the same
in undivided moieties.   The purchase was made in the name
of Drummond alone, who was reported by the executors
as the sole purchaser, and the sale was ratified as made to
him.   Green was no party to the contract made with the
executors, nor in any manner known to them as a purchaser.
His alleged agreement was made with Drummond, and as
stated in the bill, was a mere parol agreement, not evidenced
by any writing.   This Court in that case said: "There can
be no doubt that the alleged agreement between Green, the
appellant, and Drummond, as set out in the bill of com-
plaint, was an agreement within the fourth section of the
*Statute of Frauds.*"   But in that case it was contended that
upon the pleadings and proof, there was a trust created in
favor of the appellant.   The effect of the agreement being,
as alleged, to charge Drummond, as trustee of Green, to the
extent of the moiety of the land.   The Court in discussing
this contention said: "Here we are met by the provisions of
the seventh section of the *Statute of Frauds,* which declares
that 'all declarations or creations of trust, or confidences of
any land, etc., should be manifested and proved by some
writing, etc., or else they shall be utterly void, and of none
effect.' "   It was also argued in that case that the effect of
the transaction therein involved was to create a resulting
trust in the property in favor of Green, to the extent or in
the proportion of the money so paid or furnished by him;
thus bringing the case within the provisions of the eighth
section of the Statute.   But the Court after a full discus-
sion of both the seventh and eighth sections of the Statute
in respect to the rights acquired by Green under his agree-
ment with Drummond, said: "It follows from what has been
said:

1st. "That the appellant is not entitled to claim a specific
execution of the agreement, whereby, as alleged in the bill, it
was agreed between him and Drummond that he should
become a joint purchaser of the property, and hold to the

extent of one moiety. Such an agreement, under the *Statute of Frauds,* can be proved only by writing.

2nd. "It also follows, for the reasons before stated, that the appellant is not entitled to relief, upon the ground of a resulting or constructive trust in the property, under the eighth section of the Statute.

"It remains to be considered whether, under the pleadings and proofs in the cause, the appellant is entitled to any, and what relief in a Court of Equity?

"A specific execution of the alleged agreement being denied, the question is, whether the bill should be retained for the purpose of awarding compensation for the purchase money paid and advanced by him?

"It has been said to be a general rule of equity that 'no one shall avail himself of a law made for his protection, so as to injure another, and especially, not to enrich himself at his expense. *3rd Rand,* 258.' "

"The *Statute of Frauds* was intended to protect parties against feigned or incomplete agreements. But when one party induces another, on the faith of a parol contract, to place himself in a worse situation than he would have been if no agreement existed, and especially if the former derives a benefit therefrom, at the expense of the latter, and avails himself of his legal advantage, he is guilty of a fraud, and uses the Statute for a purpose not intended, the injury of another, for his own profit. The fraud does not consist of availing himself of the Statute to protect himself, but in using it to appropriate to himself what justly belongs to another. *3rd Rand,* 259."

"To prevent such injustice, Courts of Equity, in cases where the party is not entitled to specific performance, often grant relief by decreeing just compensation; that is, by decreeing the repayment of the money expended on the faith of the contract."

" 'Such relief', as stated by Judge Story (2 Eq. J., section 794), 'is ordinarily to be decreed in equity only as incidental to other relief sought by the bill and granted by

the Court, or where there is no adequate remedy at law, or where some peculiar equity intervenes.' "

"The money not being advanced as a loan to be repaid, but expended in pursuance of the agreement for the joint purchase of the land, in order to maintain an action at law to recover back the money, it would be necessary to prove the contract under which it was paid which he would be precluded from proving by parol, by reason of the provisions of the Statute, and thus his remedy at law might fail and justice be denied. *3rd Rand,* 259, 260; *White, Admx.,* v. *Coombs, Ex'r,* 27 Md. 489."

"In such case, according to authorities, a Court of Equity ought to give relief, because there is no remedy at law, or a very inadequate and precarious one."

"These authorities sufficiently establish the jurisdiction and power of a Court of Equity to grant relief to the appellant in the present case by decreeing compensation."

"The measure of compensation to which he will be entitled is a decree for the money paid and expended by him in the purchase of the property, with interest thereon."

This case is very similar to the case of *Green* v. *Drummond, supra,* and for that reason we have quoted very fully from the opinion of the Court in that case, and in our opinion the principles there applied apply with equal force to this case.

In the case of *Mogart* v. *Smouse,* 103 Md. 463, the partnership there created extended to the "purchase, development and sale, for their joint account" of the land in question. The partnership in this case extends only to the profits to be derived from the operation and development of the lands by the joint labors and exertion of the appellant and appellee—these profits to be applied to the payment of the purchase money—and upon the payment of the purchase money out of these *profits,* and conveyance of the land to them, they were to hold the land, not as partners but as tenants in common; the partnership not continuing after

the payment of the purchase money, and not extending to profits to be derived from the sale of the lands.

Under the aforesaid agreement in this case, the partnership would have been dissolved upon the payment of the purchase money in full and a conveyance of the lands so bought from Getty to Alexander and George as tenants in common, or, as the entire interest in said lands was conveyed by Getty to George, a conveyance by George of a moiety therein to Alexander. As it is, however, even though the whole of the purchase money has been paid, the conveyance from Getty to George and Alexander is prevented by the conveyance by Getty to George and the subsequent death of Getty, and as George refuses to convey a moiety to Alexander, the enforcement of the same is prevented by the Statute. Therefore no specific performance can be had. But by application of the principles in the case of *Green* v. *Drummond,* the appellee should be compensated to the amount of the profits belonging to him, under the agreement aforesaid, derived from the joint operation and development of the lands, which were applied, or were received by the appellant to be applied to the payment of the purchase money and to the improvement of the property. The partnership, however, still exists, to be dissolved by a decree of Court, and as it exists the defences of laches and limitations are not effective.

From what we have said, the learned Court below very properly passed its decree, from which this appeal is taken, dissolving the co-partnership and granting an accounting. We will, therefore, affirm the decree of the lower Court, with costs to the appellee.

*Decree affirmed, with costs to the appellee.*