STANLEY I. BYER et al. *v.* MARIE SZANDROWSKI.
[No. 67, October Term, 1930.]

*Decided January 14th, 1931.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*J. Paul Schmidt,* submitting on brief, for the appellant.

*Albert F. Wheltle,* with whom was *Charles F. Harley* on the brief, for the appellee.

Digges, J., delivered the opinion of the Court.

The bill of complaint here considered was filed by the appellants against Alexander Szandrowski, and Marie Szandrowski, his wife. The defendants interposed a demurrer to the bill; and the chancellor sustained the demurrer of the wife and overruled that of the husband, with leave to him to answer. The appeal is from the order sustaining the demurrer on behalf of the defendant wife without leave to amend. The allegations of the bill, which for a determination of the question presented are assumed to be facts, may be briefly but substantially thus stated:

In May, 1926, the plaintiffs Stanley I. Byer and Adolph J. Kadan and the defendant Alexander Szandrowski verbally

agreed to enter and did enter into a partnership for the purpose of acquiring a tract of land in that section of Baltimore City known as Curtis Bay, particularly described in the bill of complaint and containing eleven acres, more or less; this land contained large deposits of sand and was also suitable and available for building sites, the purpose of the partnership and the contemplated purchase being to mine the sand or dispose of it on a royalty basis and thereafter to sell the land for building sites. It was agreed that the parties should each have an equal one-third interest in the partnership, sharing equally the losses or profits as the case might be; that Szandrowski and Kadan should each invest the sum of $2,500 in cash, and that Byer's investment in the partnership business should be his services rendered and to be rendered. Such services were in acquiring land for the benefit of the partnership, arranging for the financing of the balance of the purchase price over and above the $5,000 which the other partners were to put in; also in obtaining contracts or leases of the entire property or any part for the removal of sand on a royalty basis, in superintending the removal or excavation of the sand, generally supervising the operations, and in selling said land as and when the same was ready for division and sale.

It was further agreed between the parties that when the land was acquired the title thereto should be taken in the name of Szandrowski and Kadan for their own benefit and the benefit of Byer, and to so hold said title until Byer had obtained contracts or leases for the removal of sand, thereby placing the partnership on an income-producing basis; that upon obtaining such contracts or leases Szandrowski and Kadan would convey to Byer a one-third undivided interest in and to said land by a good and sufficient deed executed by them and their respective wives, after which conveyance Szandrowski, Kadan, and Byer should each own and hold an undivided one-third interest in and to the whole of the land, and be entitled to one-third of the profits therefrom, bearing one-third of the losses incurred. In pursuance of such verbal agreement, Byer procured a contract for the pur-

chase of the land from the then owner, who agreed to sell and convey the same to Szandrowski and Kadan at and for the sum of $11,000. This contract is filed as an exhibit with the bill; and by its terms, arranged for and procured by Byer, it provided that Rosenthal, the vendor, should take a purchase-money mortgage for $6,000, being the balance of the purchase price after applying the $5,000 put in the partnership by Kadan and Szandrowski.

It was further agreed by the parties that, upon the leasing of the land for the purpose of mining sand, all sums received as royalty should be applied first to the payment of the taxes, interest on the purchase-money mortgage, and other charges and expenses of said property, and the balance of the income to be applied to the liquidation of the mortgage indebtedness as and when the same became payable, after which any further income was to be divided equally among the three. In pursuance of the contract so negotiated by Byer, Rosenthal and wife conveyed the land to Adolph J. Kadan and Helen T. Kadan, his wife, and Alexander Szandrowski and Marie Szandrowski, his wife, in fee simple, which deed is also an exhibit filed with the bill of complaint. This deed conveyed to Kadan and wife as tenants by the entirety a one-half undivided interest in said land, and to Szandrowski and wife as tenants by the entirety the other one-half undivided interest therein. Contemporaneously with the execution of this deed, the grantees therein executed to Rosenthal a purchase-money mortgage for $6,000, which was the amount remaining unpaid after applying the $5,000 contributed by Kadan and Szandrowski. At the time of the conveyance by Rosenthal, both Helen T. Kadan and Marie Szandrowski knew and were fully aware and advised of the agreement between Byer and their husbands, and agreed to hold the property with their respective husbands subject to the agreement of partnership and subject to the rights and equities of Byer in and to the same. No part of the consideration for the conveyance was paid by Mrs. Kadan or Mrs. Szandrowski; whatever interest they have in the property is by reason of their dower rights, subservient to the rights of the partnership.

and the partners comprising the same; their names were not inserted in the deed by any authority or direction of their respective husbands, and were inserted without the consent of Byer, having been inserted by the conveyancer who drew the deed and who was without any advice as to the existence of the partnership or the rights of Byer in the property. After it was discovered that their names had been inserted, the wives agreed to hold title to the propery subject to the agreement of partnership and subject to the rights of Byer therein.

Immediately after the purchase of the property Byer exerted his best efforts towards obtaining a lease for the digging of the sand, and as a result of such efforts and negotiations on the part of Byer an agreement was finally entered into with the firm of Blockston & Cremen for the removal of sand from the land on a royalty basis, which lease was dated August 16th, 1926, and was executed by the lessees, and by Kadan and Szandrowski, together with their wives, as lessors; and is also filed as an exhibit. After the execution of the lease, and the business being put in operation at a profit, Byer requested the grantees in the deed from Rosenthal to execute to him a deed for an undivided one-third interest in the land referred to, in accordance with the agreement. Upon receipt of such request, Kadan and wife expressed their willingness to join in a deed so conveying such undivided interest to Byer, but Szandrowski and wife refused to sign said deed, claiming that Byer was not entitled to his one-third interest until the mortgage on the property had been paid and released; thereupon Kadan and wife did execute and deliver to Byer a deed for an undivided one-sixth interest in the land, which deed is dated September 1st, 1926, duly recorded, and filed as an exhibit. The mortgage for $6,000 to Rosenthal has now been paid and released, but Szandrowski and wife still "wrongfully, fraudulently and unlawfully" refuse to execute and deliver a deed to Byer conveying to him the remaining one-sixth undivided interest in and to the land.

Since the execution of the lease and the operation of the sand bank by the lessees, the enterprise has been highly profitable; the mortgage of $6,000 has been paid in full, with interest thereon; all taxes for the year ending December 31st, 1929, have been paid; and there is now being regularly received from the royalties on the sand removal a monthly sum of $250 to $300; the profits and income received, after the payment of the mortgage and expenses, have amounted to over $3,500, and there is still due from the lessees the sum of over $1,500 for royalties up to February 26th, 1930, the time of filing the bill of complaint. This profit and income has been brought about and is the result entirely of the efficient management and careful attention to the business by Byer; and, although for the past three years or more the defendant Szandrowski has attempted to prevent the plaintiff from performing his duties, nevertheless he has performed them properly and fully, and his efforts have been largely instrumental in acquiring the profits mentioned and those now accruing.

The bill then charges that Szandrowski is unlawfully, wrongfully and fraudulently attempting to deprive Byer of his rightful share in the property, as well as in the profit and income arising therefrom; that, although Byer has been able to keep supervision of the work on the land, nevertheless Szandrowski, whenever he visits the property and finds Byer there, attempts to order him away, and directs the men operating the business not to give him any information or to allow him on the premises; that Szandrowski is endeavoring to prevent Byer from performing his work as agreed, and to unlawfully deprive him of the profits to which he is entitled and his interest in the land; that irreconcilable differences have arisen between the parties, and that the business, under the circumstances, cannot be properly conducted, and that a receiver should be appointed to take charge of the property, business, and assets, collect the amounts due on the royalties as and when they become due, and apply the same to taxes and other expenses, and divide the balance equally among the respective parties in one-third portions;

that the plaintiffs are entitled to have an accounting of the profits and income derived from the partnership, and to have Szandrowski pay over to Byer his just and rightful portion; that Byer, having fully performed his part of the agreement, is entitled to have the one-third interest in the land, that is, a conveyance to him by Szandrowski and wife of a one-sixth undivided interest in fee simple by a good and sufficient deed.

The prayers of the bill ask the court by its decree to declare the partnership now existing between Byer, Kadan, and Szandrowski, an accounting on the part of Szandrowski, and payment of the share found by such accounting to be due Byer to him; that a receiver be appointed to take charge of the partnership business and property, collect the rents, pay the taxes and expenses, and divide the remainder in equal one-third portions among the partners; that Szandrowski and wife be decreed to specifically perform the agreement by conveying to Byer by a good and merchantable title a one-sixth undivided interest in the land; and that they further be enjoined from selling, leasing, mortgaging, or otherwise disposing of or incumbering the property until the termination of the proceedings.

The theory upon which the bill is framed and the relief prayed for is that Szandrowski and wife now hold a one-sixth undivided interest in the described property as trustees for Byer, for the reason that upon the facts stated a constructive trust arises, by operation of law. Therefore the question is: Does the law, as settled by the decisions of this court and other authorities, sustain the contention of the appellants? In our opinion it does. The question has been frequently considered by this court and is the subject of several recent and exhaustive opinions, among which are *Springer v. Springer,* 144 Md. 466, 125 A. 162, 168; *Jasinski v. Stankowski,* 145 Md. 58, 125 A. 684; *Dillfelder v. Winterling,* 150 Md. 626, 133 A. 825; *Soho v. Wimbrough,* 145 Md. 498, 125 A. 767, 772; *Coyne v. Supreme Conclave,* 106 Md. 57, 66 A. 704, 705; *Dixon v. Dixon,* 123 Md. 44, 90 A. 846; *Leupold v. Leupold,* 156 Md. 516, 144 A. 647; *McIntyre v. Smith,* 154 Md. 660, 141 A. 405.

In *Perry on Trusts* (7th Ed.), sec. 168, it is stated: "Constructive trusts may be divided into three classes, to be determined according to the circumstances under which they arise. First, trusts that arise from actual fraud practiced by one man upon another. Second, trusts that arise from constructive fraud. Third, trusts that arise from some equitable principle independent of the existence of any fraud."

In *Coyne v. Supreme Conclave, supra,* it was said: "There is also a class of trusts which arise *ex maleficio,* and equity, in order to reach the possessor of what in conscience belongs to another, turns him into a trustee. 'Thus, if a man in confidence of the parol promise of another to perform an intended act, should omit to make certain provisions, gifts, or arrangements, by will, or otherwise, such a promise would be specifically enforced in equity, although founded on a parol declaration creating a trust contrary to the statute of frauds, for it would be a fraud upon all other parties to permit him to derive a benefit from his own breach of duty and obligation.' "

In *Springer v. Springer, supra,* speaking through Judge Offutt, we quoted with approval from *Perry on Trusts,* sec. 166, wherein the author said: "There is another large class of trusts which arise from frauds committed by one party upon another. Thus, if one party procures the legal title to property from another by fraud or misrepresentation or concealment, or if a party makes use of some influential or confidential relation which he holds towards the owner of the legal title, to obtain such legal title from him upon more advantageous terms than he could otherwise have obtained it, equity will convert such party thus obtaining property into a trustee." Judge Offutt then said: "A satisfactory general definition of such trusts is to be found in 26 *R. C. L.,* p. 1232, where it is said: 'Constructive trusts are such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it. They arise purely by construction of equity, independently of any actual or presumed intention

220

of the parties to create a trust, and are generally thrust on the trustees for the purpose of working out the remedy. The trusts are not what are known as technical trusts, and the ground of relief in such cases is, strictly speaking, fraud, and not trust. Equity declares the trust in order that it may lay its hand on the thing and wrest it from the possession of the wrongdoer.' * * * The 'fraud' referred to in these definitions need not be actual, but may be constructive, and one 'who acquires land or other property by fraud, misrepresentation, imposition, concealment, or under any other such circumstances as render it inequitable for him to retain it, is in equity regarded as the trustee of the party who suffers by reason of the fraud or other wrong and who is equitably entitled to the property.' And a violation of a parol agreement to hold property in trust for another may, under certain circumstances, be sufficient evidence of fraud to raise a trust in favor of the promisee (39 Cyc. 178), and such an agreement may be inferred from the acts and conduct of the parties, as well as from their spoken words."

In *Anthony v. Leftwich's Representatives,* 3 Rand. (Va.) 259, the court said: "The statute of frauds was intended to protect parties against feigned or incomplete agreements. But when one party induces another, on the faith of a parol contract, to place himself in a worse situation than he would have been, if no agreement existed; and especially, if the former derives a benefit therefrom, at the expense of the latter, and avails himself of his legal advantage; he is guilty of a fraud, and uses the statute for a purpose not intended; the injury of another for his own profit. The fraud does not consist in availing himself of the statute to protect himself; but in using it to appropriate to himself, what justly belongs to another." This language was quoted with approval in *Wiley v. Wiley,* 115 Md. 655, 81 A. 180; *Green v. Drummond,* 31 Md. 83; and *Jasinski v. Stankowski, supra.* While the statute of frauds requires a writing to create an express trust in real property, it has no application to cases where the law raises a constructive trust by reason of the fraudulent

acts and purposes in procuring title to the land. The rule in equity has always been that the statute is not allowed to operate as a protection for a fraud, or as a means of seducing the unwary into a false confidence whereby their intentions are thwarted or their interests are betrayed, and parol trusts in real estate have been frequently established in direct contradiction of the statute on the ground of fraud. Constructive trusts are held not within the statute because they rest in the end on the doctrine of estoppel, and the operation of an estoppel is never affected by the statute of frauds. Such a trust will arise when, in addition to the breach of the parol agreement, there is some element of fraud or bad faith which makes it inequitable that the person committing the fraud or acting in bad faith should hold the legal title absolutely and discharged of any trust. 26 *R. C. L.* 1233; *Jasinski v. Stankowski, supra; Dillfelder v. Winterling, supra.*

We are dealing on this appeal only with that interest in the property the record title to which is in Marie Szandrowski, the wife of one of the partners; and under the facts established by the demurrer she must be held to be a trustee for the benefit of the partnership, and therefore, a trustee for the benefit of Byer to the extent of a one-sixth interest in the land. Equity will not permit the statute of frauds to be so used as to result in the perpetration of fraud, either intentional or constructive, by the party who invokes its aid. In the case now before us Mrs. Szandrowski knew of the partnership agreement, knew that there was no consideration moving from her to Rosenthal, knew that her name was inserted as one of the grantees in the deed without the direction of her husband or Kadan and without the knowledge of Byer; and after the fact of her being a grantee was brought to her attention, she promised to hold the property as trustee for Byer. Under these circumstances equity and fair dealing require that she be held a trustee; and in such case the law does not permit the statute of frauds to be interposed as a bar. It is argued that the case of *Soho v. Wimbrough,*

*supra,* is authority for the contention of the appellee. We do not so construe that case. It was there said: "The alleged agreement, if sufficiently proven, is entirely oral, and comes. clearly within the statute of frauds, which is a complete defense, unless the bar of the statute is removed by such partial performance by the appellant as would make it inequitable to deny specific.performance of the agreement. This court has cited with approval the language of Lord Hardwicke in the case of *Lacon v. Mertins,* 3 Atk. 4, in which he said that the acts relied on as part performance 'must be such an act done as appears to the court would not have been done unless on account of the agreement.' " The rule there stated is in conformity with the rule as pronounced in the authorities hereinbefore cited. The distinction between that case and this. is in the evidence and not in the statement of the rule. In our opinion the action of the chancellor in sustaining the demurrer of Marie Szandrowski was error; it should have been overruled, with permission to answer.

> *Order reversed, and case remanded, that further proceedings may be hand in accordance with the views herein expressed, with costs to the appellant.*