BLOOM BUILDING & LOAN ASSOCIATION et al. *v.*
BARNEY KRUCOFF.
[No. 29, January Term, 1931.]

*Decided April 30th, 1931.*

The cause was argued before BOND, C. J., PATTISON,
URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Walter C. Mylander* and *Nathan Patz,* for the appellants.

*Robert Biggs* and *Richard D. Biggs,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

On April 22nd, 1926, and for some years prior thereto,
William L. Fisher was the owner of property in Baltimore
City known as 728 North Gay Street. Shortly before that
time the improvements on the property were partially de-

stroyed by fire. Fisher, desiring to restore and enlarge the building on the lot, procured from the Aetna Mortgage Company a loan of $5,000, secured by a mortgage on the Gay Street property, $3,300 of which was turned over to him, and $1,700 retained by the mortgagee pending the completion of the improvements. This was found to be insufficient, and Fisher then endeavored to place a second mortgage of $4,000 on the property, which he was unable to do until he induced his sister, Emma B. Greiser, to pledge her property, 110 North Milton Avenue, as additional security for the $4,000 loan. This arrangement was made by Louis Samuels, who for some time prior thereto, and at that time, was the attorney for Fisher. At the same time Samuels was the attorney for the appellant, the Bloom Building & Loan Association. After Mrs. Greiser had been persuaded to pledge her property for the loan, application was made to the Bloom Building & Loan Association by Samuels, and the association agreed to make the loan, secured by a mortgage on the Gay Street and Milton Avenue properties, for $4,000, with the further understanding that $1,500 of the $4,000 should be retained and not turned over to Fisher until the improvements contemplated had been completed. In furtherance of this arrangement, Samuels, acting as attorney for all parties concerned, prepared a deed from Fisher to Mrs. Greiser for the Gay Street property, and the mortgage from Mrs. Greiser and husband to the building association. On April 22nd, 1926, the association delivered to Samuels two checks, both made payable to Mr. and Mrs. Greiser, one in the sum of $2,500 and the other for $1,500. On that day Samuels took the mortgage which he had prepared, together with the checks, to the home of Mr. and Mrs. Greiser (he previously, on that same day, having had Fisher execute a deed for the Gay Street property to the Greisers), and had Mr. and Mrs. Greiser execute the mortgage and indorse the checks in blank, which checks were returned after such indorsement to Samuels. It then appears that the check for $2,500 was deposited by Samuels in his own name, and disbursed by him, although the record does not show to whom or at what time that sum was dis-

bursed. In respect to the $1,500 check, which, according to the undisputed testimony, was to be held as a guaranty that the contemplated improvements on the property would be made and paid for, so that the mortgagee would have the additional security represented by the improvements, it was left with Samuels, who at that time was the attorney and agent of the association for that purpose. The record further discloses that a contractor by the name of Feldman was first engaged to construct the improvements, but failed to proceed with the work and was discharged. Subsequently, on December 13th, 1926, Samuels prepared a contract, which was executed by the appellee and Fisher, for the furnishing of material and doing the work necessary in making the contemplated improvements, the price specified to be paid in this contract being $3,700. This contract contained the specifications of the material and work to be done, and provided for the completion of same within sixty working days, the contract price to be paid after the completion of the work and acceptance of same by the owner. At the time of the making of this contract, the appellee inquired of Samuels how he would be paid, and was told by Samuels the sources from which he would be paid, among which was the $1,500 retained by the association out of the mortgage of $4,000. The work was completed in March or April, 1927, at which time demand was made upon Samuels for payment, without success. There is some suggestion in the record that the work was not completed to the satisfaction of Fisher; but this question is removed from consideration in this case, because the appellee, by a suit on the contract, recovered a judgment against Fisher for the full amount of the contract price, and interest. The building association pass book was in the name of Henry T. and Emma B. Greiser, they being the mortgagors, although the verbal agreement and understanding was that Fisher was to make all payments to the association upon the mortgage. There was a default in these payments in the latter part of December, 1926, but nothing seems to have been done in respect thereto until May, 1927, at which time Samuels was directed to foreclose the mortgage. He

obtained a decree by which he was appointed trustee to make sale of the property. No sale was made, but on June 23rd, 1927, the money represented by the $1,500 check, which had been retained by the association and held by Samuels, was applied upon the mortgage. This application was made a year and two months after the date of the mortgage, during which time interest was charged on the full $4,000 loan. Not being able to receive any payment for the work and materials furnished, and after the obtention of the judgment against Fisher, the appellee filed his bill of complaint in the Circuit Court No. 2 of Baltimore City, setting forth substantially the above stated facts, and praying "that the special deposit with the Bloom Building and Loan Association, made as in this bill of complaint fully set forth, may be declared to be held by it in trust for your orator as a contractor performing work on said property, 728 North Gay Street, and that it may, by a decree of this court, be required to pay over the same unto your orator." The testimony was taken in open court, and the chancellor, on December 13th, 1930, decreed that the respondent, the Bloom Building and Loan Association, pay unto the plaintiff the sum of $1,500, with interest from June 1st, 1927, together with the costs of the suit. It is from that decree the appeal here is prosecuted.

Before coming to trial, the association demurred to the bill of complaint, which was overruled by the court, the grounds of which we do not deem it necessary to discuss, further than to say that the chancellor committed no error in overruling the demurrer.

The real and important question presented is whether or not, under the circumstances as shown by this record, the $1,500 retained by the association and held by its attorney is impressed with a trust in favor of the appellee. The chancellor decided this question in the affirmative, and we are in accord with that opinion. The record discloses to our entire satisfaction that the purpose of retaining the $1,500 was to guarantee to the association that the improvements specified in the contract between the appellee and Fisher

should be made and settled for, thereby increasing the value
of the security, the property described in the mortgage, to
the extent of those improvements. Neither have we any
doubt that the building association so understood and in-
tended. Strong evidence of this is the fact that there were
two checks, one for $2,500 and one for $1,500. It is not
entirely clear whether Samuels went to the association and
obtained the two checks, or whether they were sent to him.
In either event, it is convincing that the intention to retain
$1,500 for the purpose above indicated and testified to was
known to the officers of the association. But even if this
were doubtful, it is certain that under the circumstances
Samuels was the attorney and agent of the association to
consummate the transaction in such manner as would carry
out the intention and design of the parties. We have no
doubt that, when Samuels had the check indorsed by the
Greisers in blank and returned to him, it was held by him
for the special purpose of paying for the improvements upon
the property when completed, thereby increasing the value
of the property upon which the association had a $4,000
mortgage. The evidence is not satisfactory as to the date
on which Samuels delivered the check to the association, he
not being able to fix this date definitely, although he does
testify that it was about the time that he was directed to
institute foreclosure proceedings. The witness Kres, the
secretary of the association, testified without contradiction
that the default in the mortgage had continued for more
than twenty weeks before foreclosure was directed; so that
it is conclusive that, at the time the contract between the
appellee and Fisher was executed in Samuels' office, Samuels
then had the check in his possession. At that time, upon
being asked, by the appellee, where Fisher was to get the
money with which to pay for the improvements, he was told
by Samuels, who was then, as we have found, the attorney
for both the association and Fisher, that upon the completion
of the work he would be paid out of certain funds, among
which was designated the $1,500 retained by the association,

to be used in making such payment. The application of the $1,500 as payment on the mortgage was made on June 23rd, 1927, long after the work had been completed, it having been in the possession of either Samuels or the association from April 22nd, 1926; and the association, from the date of the mortgage, had been charging interest and expenses on a $4,000 loan, strongly indicating that the $1,500 was only being held to insure that the improvements would be made and paid for. It is evident that the application of this money as a credit on the mortgage was induced by the fact that values of property were depreciating, and the association had doubt as to whether or not the property mentioned in the mortgage, after the improvements, was sufficient security for the amount loaned. Such is the testimony of Samuels; and it is uncontradicted. To permit such application of the $1,500 would be utterly to disregard the understanding and agreement of the parties, and a diversion of the fund from the specific object for which it was dedicated, to the financial advantage of all of the parties concerned with the exception of the appellee, and to his positive detriment. Such application has resulted in labor and materials employed in the improvement of the building, furnished by the appellee, to the extent of $3,700, inuring to the benefit of the association in the shape of additional security. In other words, whereas the agreement was that the association would hold a mortgage of $4,000 on the property after the improvements were made, it now has a mortgage of something slightly over $2,500, and the owners of the property, instead of owing a mortgage of $4,000, which they expected and agreed to, have a property which is now burdened with a mortgage of approximately $1,500 less, all at the expense of the appellee. A court of equity is peculiarly the tribunal to rectify such injustice. From the moment that the mortgage for $4,000 was executed, the consideration for which was the giving of the two checks aggregating $4,000, the association had no absolute property in any of the money represented by these checks, but the $1,500 check was dedicated to the payment for improvements on the property. Neither did the Greisers

nor Fisher, from the time the contract was entered into by Fisher with the appellee, have the right or power to divert it and apply it as a credit upon the mortgage. The Greisers had no such right, because they had indorsed the check in blank and delivered it to Samuels, with a thorough understanding of the purpose for which it was to be held. Fisher had no such right, because it was being held by his agent and attorney, Samuels, who induced the appellee to furnish the material and do the work upon the property by telling him that the $1,500 would be applied in defraying such expense.

In *Springer v. Springer,* 144 Md. 466, 125 A. 162, 168, affirmed in *Byer v. Szandrowski,* 160 Md. 212, 153 A. 49, it was said, in speaking of constructive trusts: "The trusts are not what are known as technical trusts, and the ground of relief in such cases is, strictly speaking, fraud, and not trust. Equity declares the trust in order that it may lay its hand on the thing and wrest it from the possession of the wrong-doer. * * * The 'fraud' referred to in these definitions need not be actual, but may be constructive, and one 'who acquires land or other property by fraud, misrepresentation, imposition, concealment, or under any other such circumstances as render it inequitable for him to retain it, is in equity regarded as the trustee of the party who suffers by reason of the fraud or other wrong and who is equitably entitled to the property.' " In that case the court quoted with approval from 26 R. C. L. 1232, where it is said: "Constructive trusts are such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it. They arise purely by construction of equity, independently of any actual or presumed intention of the parties to create a trust, and are generally thrust on the trustees for the purpose of working out the remedy." The same principle was applied in *Parker State Bank v. Pennington* (C. C. A.), 9 F. (2d), 966, 969, where, in dealing with the status of a special deposit, the court said: "Every person who receives money to be paid to another,

or to be applied to a particular purpose, to which he does not apply it, is a trustee, and may be sued either at law, for money had or received, or in equity, as a trustee, for a breach of trust." To like effect, see *Cotulla State Bank v. Herron et al.* (Tex. Civ. App.), 191 S. W. 154, where it is said: "When a customer makes a special deposit in a bank of funds for the purpose of discharging certain of his liabilities which may be presented for payment, it becomes a deposit which cannot be used by the bank for any other purpose, and is held in the nature of a trust fund, and cannot be used to pay a note due the bank unless so intended at the time of deposit." In *Sawyers v. Conner,* 114 Miss. 363, 75 So. 131, 133, the money was deposited as a special deposit for the purpose of paying a contractor for building a house. The bank undertook to appropriate the money to its own use in settlement of an indebtedness due to it. The court, in denying the right of the bank to do that, said: "The money at all times was charged with the trust in favor of the contractor, and at no time could the bank have charged the proceeds against any indebtedness due by Mrs. Sawyer to the bank."

We think it is abundantly shown by this record that the retention of the $1,500 was for the special purpose of being applied towards payment for improvements made upon the property; and that this was understood, arranged for, and agreed to by all of the original parties to the transaction; that Samuels, having in his possession the checks, and being the attorney for the association and Fisher, informed the appellee of that purpose, reliance upon which induced the appellee to furnish the material and do the work in improving the property. There can be no doubt that Samuels understood that upon his representations the appellee looked to this fund as part payment; and it makes no difference that there was no fraud in the inception of the arrangement and agreement; it was constructive fraud when the money was diverted from its original purpose to, the enrichment of the association, the Greisers, and Fisher, and to the financial detriment of the appellee. The association misapplied the $1,500 held by it or its attorney and agent, under such circumstances

as render it inequitable for it to retain the benefit thereof, and, in equity, it must be regarded as the trustee of the party who suffers by reason of such wrongful misapplication, and who is equitably entitled thereto.

For the reasons stated, the decree of the chancellor will be affirmed.

*Decree affirmed, with costs.*

ADKINS, J., filed a dissenting opinion as follows:

I cannot concur in the conclusion reached by the majority of the court. In my opinion the facts shown in the record do not justify the finding that Samuels was the agent of the association in respect of any arrangement that he made with appellee. There is no evidence that the association had any relations whatever with appellee, or that it authorized or even knew of the agreement between him and Fisher, or that appellee was engaged in the work. Samuels, appellee's witness, and who at the time of testifying had no relations with the association, swore positively that he was not authorized, and did not undertake, to involve the association in the agreement between Fisher and appellee, and appellee admits that he had no communication with any one representing the association, but simply relied upon statements made to him by Samuels. As to these alleged statements, these two witnesses for appellee are in conflict.

At the time the mortgage was executed and the two checks given, appellee was in no way connected with the building operations. Fisher had employed, or was about to employ, another builder to make the improvements required by the mortgagee. But there is not a particle of evidence that the mortgagee was in any way connected with, or obligated to, this builder, or that there was any agreement or understanding by the mortgagee that the $1,500 or any other amount should be held by Samuels for, and paid by him, to the builder. On the contrary, Samuels, appellee's witness, testified that the money was to be held for Fisher until the im-

provements were made. The builder threw up the job, and some time later, it is difficult from the record to tell just when, Samuels returned to the mortgagee the $1,500 check which he had been holding in escrow.

Some time in the spring or early summer of 1927, after default for several months in paying the weekly installments due, the mortgagee ordered foreclosure. These proceedings were subsequently stopped, and the mortgage reduced by crediting the $1,500 on account of the original mortgage and overdue interest and charges.

This is not a case of a deposit for the benefit of the builder. In my opinion, as gathered from the record, the $1,500 check was held in escrow for the protection of the mortgagee only. On default in the mortgage, the association had the right, with the consent of the mortgagor, to credit the check on the mortgage debt and to continue the mortgage for the reduced amount. The mortgagor was entitled to an allowance for interest charged on the $1,500, which she never received, but that is a matter between the mortgagor and mortgagee, in which appellee is not concerned.

If I concurred in the view of the majority I would have to base that conclusion on suspicion. There are suspicious circumstances. But to base my conclusion on them I should have to disregard positive, uncontradicted, and apparently disinterested evidence offered by appellee himself.