## WILLIAM S. REYNOLDS *vs.* RALPH W. REYNOLDS ET ALS.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

154

*Lazarus S. Heyman* and *Julius B. Kuriansky,* for the appellant (plaintiff).

*William Hanna,* with whom was *Joseph Schwarz,* for the appellees (defendants).

BROWN, J.   The following pertinent facts appear in the finding:   The plaintiff purchased a tract of land in Danbury in 1909 and took title in the name of his wife, Rosamond, and thereafter at his own expense erected a house and occupied the premises with her until her death in 1915, having had no agreement with her with respect to ownership, and she having held the absolute title.   He exercised rights of ownership, management and control while they lived there. The year following his wife's death he remarried and a few months later, because of marital difficulties, conveyed his interest in the premises by quitclaim deed to his brother Walter, for the purpose of preventing his second wife from acquiring any interest by attachment or distribution.   In 1931 the estate of Rosamond, who had died intestate leaving this real estate as her only property, was probated, a one-third interest in the premises being distributed to the plaintiff, and the remaining two-thirds being distributed to the defendants and Merwin Reynolds, who were the only surviving children of the plaintiff and Rosa-

mond Reynolds. The plaintiff and the defendants actually participated in and had full knowledge of all of the probate proceedings, and the plaintiff made no claim to any portion of the estate except his distributive share as surviving husband. Thereafter, plaintiff's brother Walter, after a conversation between him, the defendants Raymond and Ralph, and the plaintiff, conveyed by quitclaim deed at the request of the plaintiff, to each of the defendants and Merwin Reynolds, and Raymond as trustee for Wilma Reynolds, the plaintiff's daughter by his second wife, an undivided one-fifteenth interest in the premises. Apparently it was assumed that the plaintiff as surviving husband had an undivided one-third interest in the property and the intention of this deed was evidently to convey that interest. During this conversation it was agreed that Walter should convey the plaintiff's interest in the property to the defendants, but that he might occupy the same for life. This conveyance was absolute and without reservations and the deed recited consideration. May 2d, 1932, Merwin Reynolds conveyed all of his interest in the premises to the defendant Norma I. Baxter.

The plaintiff has resided in the house on the premises up to the present. In 1932 the house, which had been designed for a single family, was altered into two apartments, and the defendants thereafter collected the rent on the portion not occupied by the plaintiff. The plaintiff never paid any rent for the property, but did pay the taxes from 1915 to 1921, and since then has expended a few hundred dollars for maintenance. The defendants Ralph and Raymond have expended over $2000 for maintenance of the premises since 1921. Since 1931 the expenses for repairs, maintenance and taxes, have been paid from the funds of a partnership, which consisted of the two

defendants last mentioned and the plaintiff. In March, 1931, the defendants advertised the property for sale, to which the plaintiff made no remonstrance. In August, 1933, the defendants notified the plaintiff to quit possession.

The first question is, whether the trial court's conclusion that the plaintiff waived his right to any resulting trust in his favor arising from the circumstances of the original purchase of the property, is warranted upon the facts found. It is undisputed that in the ordinary case where the purchase money for property is paid by one and the legal title is taken in the name of another, a resulting trust arises at once by operation of law in favor of the person paying the money, this result following the natural presumption that a purchase will inure to him who furnishes the purchase price, but that there is an exception to this general rule when, as here, the purchaser takes the conveyance in the name of his wife. In such case the transaction is regarded prima facie, as a settlement upon the grantee. *Ward* v. *Ward,* 59 Conn. 188, 195, 22 Atl. 149. In their brief the defendants contend that since here there was no agreement or understanding between the plaintiff and his wife Rosamond, and there is no other evidence sufficient to rebut the presumption of a gift, this case falls within the above exception and full title passed to Rosamond by the deed to her. *Corr's Appeal,* 62 Conn. 403, 407, 26 Atl. 478; *White* v. *Amenta,* 110 Conn. 314, 317, 148 Atl. 345. The trial court did not so find, however, and the fundamental question of intent, is one of fact for determination by it. *Ward* v. *Ward,* supra, at page 197. The trial court's failure to find a gift of the property to Rosamond, coupled with its conclusion as to the plaintiff's waiver, conclusively determines that there was no gift.

Patently no one was more fully cognizant of this fact than the plaintiff, who also well knew of course that though title to the land was taken in Rosamond's name, it was his money which paid for it. This knowledge of the plaintiff is of vital significance in testing the trial court's conclusion of waiver by the plaintiff. Waiver is the intentional relinquishment of a known right. *Crawford* v. *Bridgeport*, 92 Conn. 431, 439, 103 Atl. 125. It involves two elements, an intentional relinquishment and knowledge of one's rights. While the plaintiff asserts in his brief that an essential element of a waiver was lacking because the plaintiff was laboring under a misapprehension of his rights, he points to no facts in the finding warranting the drawing of such an inference, much less demanding it by the trial court. We find none. On the contrary, in view of the plaintiff's knowledge that though title to the land was taken in Rosamond's name and his money paid for it, there was no gift thereof to her, the only fair inference upon the record is that the plaintiff well knew that he had rights in the property, and was under no misapprehension with regard thereto at any time. That the facts support the court's conclusion that the second essential existed, is too clear for argument.

His conduct from the time the land was purchased, is strongly indicative of his intention that his interest in the property be limited to such rights as should come to him as Rosamond's surviving husband. Not only did he never before the bringing of this action on August 24th, 1933, assert any claim to the property inconsistent with this intention, but after permitting his wife Rosamond's intestate estate, consisting solely of this property, to go unprobated for sixteen years, in 1931 he acquiesced in and participated in a distribution thereof under the order of the Court

158

of Probate whereby he received a one-third interest
only as her surviving husband, and made no claim to
any further interest. His subsequent failure to object
when the property was offered for sale, and when the
expense of maintenance was paid from the funds of
a partnership comprising two of his sons and himself,
as well as the reference in his substituted complaint
herein as originally filed, to the interest he conveyed
to his brother Walter in 1916 as being "the remaining
one-third interest in said premises," all point to the
same conclusion. Nor in view of the one-third in-
terest which he admittedly did have in the property,
was there anything necessarily inconsistent therewith
in his occupancy, payment of taxes and certain ex-
penses of maintenance, as stated in the finding. The
court did not err in concluding that the plaintiff
waived his right to any resulting trust in the property.

The remaining question determinative of this ap-
peal is, whether the verbal agreement made in 1931,
that if the plaintiff would have his brother Walter
convey to the defendants the one-third interest in
the property received by the plaintiff under the distri-
bution of Rosamond's estate, he would be permitted
to occupy it during the rest of his life, followed on
February 9th, 1931, by a quitclaim deed of that in-
terest from Walter to the defendants and Merwin
Reynolds, was enforceable notwithstanding the statute
of frauds. The trial court ruled that it was not.

It is undisputed that the subject-matter of this
verbal agreement, being an interest in land, is within
the terms of the statute of frauds. But the law is
established that the statute does not extend to trusts
arising by operation of law. *Ward* v. *Ward*, supra, at
page 196; *Corr's Appeal*, supra, at page 408; 26 R.
C. L. p. 1233, § 79. Briefly, the plaintiff's contention
is that a constructive trust to the extent of a life use,

arose here by operation of law, which is enforceable in his favor notwithstanding the statute. The case of *Verzier* v. *Convard,* 75 Conn. 1, 52 Atl. 225, points out the elements that may, under the proper circumstances, make for a constructive trust, namely: fraud, misrepresentation, imposition, circumvention, artifice or concealment, or abuse of confidential relations. As is held in *Byer* v. *Szandrowski,* 160 Md. 212, 220, 153 Atl. 49, 53: "The law raises a constructive trust by reason of the fraudulent acts and purposes in procuring title to the land. . . . Such a trust will arise when, in addition to the breach of the parol agreement, there is some element of fraud or bad faith which makes it inequitable that the person committing the fraud or acting in bad faith should hold the legal title absolutely and discharged of any trust." An intentionally false and fraudulent verbal promise to begin with, obtaining the conveyance, is essential. *Sallies* v. *Johnson,* 85 Conn. 77, 80, 81 Atl. 974. A mere subsequent repudiation of the verbal promise is not enough. 26 R. C. L. 1238 and 1239, § 85; *Westphal* v. *Heckman,* 185 Ind. 88, 113 N. E. 299, 303. If this were not so, every breach of a parol agreement for the sale of land would be enforceable upon the basis of a constructive trust. There is in this case no finding of a fraudulent intent not to keep the agreement at the time it was made.

The established law of this State as to the effect to be given a duly executed and delivered deed under seal is conclusive against the plaintiff's contention. The principle recently recited by us in *Andrews* v. *New Britain National Bank,* 113 Conn. 467, 470, 155 Atl. 838, is, in substance, that the recital of a valuable consideration in the deed is sufficient to rebut any claim of trust resulting at the time the deed was made. "The modern rule permitting the actual consideration

to be inquired into notwithstanding the presence of a seal, cannot be carried so far as to permit proof of an entire absence of consideration for the purpose of nullifying the effect of a deed as a legal act; that is, of denying its legal effect as a conveyance of a specified title to the described premises." *Hartford-Connecticut Trust Co.* v. *Devine,* 97 Conn. 193, 196, 116 Atl. 239. An absolute quitclaim deed expressed to be upon a valuable consideration cannot be converted into a conveyance in trust for the grantor, by proof of an oral agreement to that effect. *Dean* v. *Dean,* 6 Conn. 285.

In so far as the plaintiff's final contention, that there was such part performance here as would take the agreement out of the statute, is concerned, since this claim was first made in this court, thus depriving us of the benefit of a finding by the trial court as to possible material facts relating thereto, we do not discuss it.

There is no error.

In this opinion the other judges concurred.