## Larsh et al., Trustees, *v.* Frank & Seder of Pittsburgh, Inc., Appellant.

Argued March 23, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*John G. Buchanan,* of *Smith, Buchanan & Ingersoll,* with him *Charles H. Sachs* and *David B. Buerger,* for appellant.

*Elder W. Marshall,* with him *J. Wray Connolly* and *Reed, Smith, Shaw & McClay,* for appellees.

OPINION BY MR. JUSTICE PATTERSON, May 24, 1943:

This was an action in assumpsit to recover additional rent alleged to be due under the terms of an amended lease.

The facts are not in dispute. In 1917 Robert H. Updegraff, the then owner, leased a lot of ground in the City of Pittsburgh to the firm of Frank & Seder for a term beginning April 1, 1917, and ending April 30, 1938. Article II, entitled "Rents", specified a monthly rental of $750. By Article IV, headed "Taxes and Assess-

ments", the lessees covenanted to pay "in addition to the net rental reserved" all taxes which might be levied on the property during the term of the lease. On December 12, 1924, the same parties executed an amendment increasing the monthly rental and extending the term of the original lease to April 30, 1968. With the consent of Updegraff, the lessor, the lease, as thus amended, was then assigned to National Department Stores, Inc., on December 23, 1924. Robert H. Updegraff died testate on July 3, 1933, and his title thereupon passed one-half to Helen U. Larsh and Walter S. Larsh, trustees, and one-half to Nancy D. Updegraff, surviving spouse, by virtue of her election to take against the will.

On November 30, 1935, the trustees and the widow, as lessors, and National Department Stores, Inc., as lessee, entered into a second amendment agreement, reciting that National Department Stores, Inc., was in course of reorganization in the federal courts, under a plan of reorganization then on file, "to effectuate which it will be necessary to modify, change and amend the terms and conditions" of the 1917 and 1924 agreements. By this second amendment, Article II of the old agreements, providing for a fixed monthly rental, was stricken and in lieu thereof there was substituted a provision for an annual rental equal to .152% of the lessee's annual gross sales less "the amount it has paid to lessors as a minimum guaranteed rental during said year *as hereinafter provided.*" The new Article II then provides: "It is understood and agreed by and between the parties hereto that regardless of the amount of lessee's gross sales, it shall pay to the lessors . . . a minimum guaranteed rental *as follows*: . . . monthly, in advance . . . Five Hundred Three and 50/100 ($503.50) Dollars and in addition thereto all taxes covenanted to be paid by lessee as set forth in Article IV designated TAXES AND ASSESSMENTS in the Indenture of Lease and Amendments thereto . . . and in addition all insurance premiums . . ."

On January 30, 1936, the lease, as finally amended, was assigned by National Department Stores, Inc., to Frank & Seder of Pittsburgh, Inc., the present lessee. During the years 1936, 1937 and 1938 the latter paid the monthly sum of $503.50, or $6,042. per year, and it also paid all taxes, aggregating about $7,000. per year. In addition it has paid the amounts by which .152% of its gross sales in those years exceeded the total of $6,042. and taxes. On the theory that the term "minimum guaranteed rental" contemplated the $503.50 monthly payments only, and that the deduction of taxes from the percentage of gross sales was improper, the lessors claimed additional rent in the sum of $16,739.56. The lessee resisted this claim, taking the position that the deduction of taxes was proper, since under the terms of the lease "minimum guaranteed rental" is expressly defined as including taxes in addition to the monthly payments; hence this action of assumpsit.

At the trial in the court below counsel entered into a stipulation as follows: "It is agreed that if the court be of the opinion that said taxes were properly deductible from the gross rent admittedly due for the several years, then judgment shall be entered for the defendant, and that if the court be of the opinion that said taxes were not properly deductible from such gross rental, then judgment shall be entered in favor of the plaintiffs in the sum of $16,739.56, with interest . . ." The trial judge directed a verdict for defendant and plaintiffs thereupon filed a motion for judgment n. o. v. Upon a reconsideration of the case, the court en banc set aside the directed verdict and entered judgment in favor of plaintiffs for the amount claimed plus interest. This appeal followed.

The judgment will have to be reversed. If the term "minimum guaranteed rental", as defined in the lease, included only the monthly payments of $503.50, then the conclusion of the court below would be correct. But this is not what the lease provides. By the terms of

Article II, as amended, the amount of the annual payment is to be arrived at by taking .152% of gross sales and deducting from this sum the amount paid "as a minimum guaranteed rental during said year as hereinafter provided." The lease then states that the minimum guaranteed rental shall be "as follows: . . . monthly, in advance . . . $503.50 . . . and in addition thereto all taxes covenanted to be paid . . . and in addition all insurance premiums . . ." Having due regard for the plain and obvious sense of this language, it means the term "minimum guaranteed rental" shall be taken to include all three of the several factors enumerated, to wit, $503.50 monthly, all taxes, and insurance premiums. We may not, as appellees in effect contend we should, disregard the words "in addition thereto all taxes covenanted to be paid by lessee as set forth in Article IV . . . and in addition all insurance premiums provided to be paid by lessee . . ."; and especially is this so in view of the evident care and skill with which the lease agreements were drawn. Compare *Jacobs' Estate,* 343 Pa. 387, 392; *Davis's Estate,* 346 Pa. 247, 252. Even if there were doubt as to the meaning of the language used—and we think there is not—we would, nevertheless, be bound to decide in favor of the interpretation contended for by appellant. "A general rule is that in case of doubt or uncertainty as to the meaning of the language used in a lease, its provisions will be construed most strongly against the lessor and in favor of the lessee": *McClintock & Irvine Co.* v. *Aetna Explosives Co.,* 260 Pa. 191, 195. See also *Williams* v. *Notopolos,* 259 Pa. 469, 476; *White* v. *Long,* 289 Pa. 525, 531; *General Realty Co.* v. *Gold,* 293 Pa. 260, 261.

We are not impressed by the contention of appellees that Article IV of the old agreements, not being expressly modified, "still stands and was in full force when the present controversy arose." While it is true the amendment of 1935 provides that except as expressly modified all the terms of the old agreements "shall be

in full force and effect", it is also provided, as part of the same sentence, that "all terms and provisions of the lease not expressly amended and/or modified hereby shall be construed in connection with this instrument." Nor is there merit in the argument that the taxes cannot be regarded as forming part of the rent because they are made payable to the tax authorities and not to the lessors. Granting that taxes and similar charges lack a technical characteristic of rent, in that they are payable to third persons, and will not ordinarily be considered as rent, the rule is primarily one of construction, as the very cases relied upon demonstrate, and must give way to a contrary intention clearly expressed. Thus in *Evans* v. *Lincoln Co.*, 204 Pa. 448, where the general rule was applied in construing an undertaking by the lessees "to pay the rent . . . and that they will pay . . . the water taxes", this Court said (p. 452) : "We do not decide that the rent might not be reserved in such a manner as to include the water rent and give the right to distrain for it. But in this case there was no such stipulation." Here there is such a stipulation; the undertaking is not simply to pay "rent and taxes" but to pay "rent as follows: $503.50 and taxes"; and hence the usual rule does not apply. See also *Re Spies-Alper Co.*, 231 Fed.. 535, 537; *Irwin Trust Co.* v. *Burke,* 65 F.(2d) 730, 732; *Neagle* v. *Kelly,* 146 Ill. 460, 34 N. E. 947.

Our conclusion, that the minimum guaranteed rental to be deducted from the percentage of gross sales includes the taxes, is confirmed by the language of the parties in paragraph sixth of Article II, where it is provided that after 1945 the lessee may cancel its lease if for a period of two consecutive years "the sum paid as minimum guaranteed rental inclusive of taxes" equals or exceeds .171% of annual gross sales. And it is further confirmed by the fact that the obvious purpose of the 1935 amendment was to effect a reduction of the rental and thereby "to effectuate" the plan for reorganization

of the lessee then on file in the federal courts. The construction advocated by appellant accomplishes this purpose, whereas that contended for by appellees would, if adopted, result in an increase of the rental both immediate and substantial.

The judgment is reversed and judgment is here entered for the appellant.