ELEANOR F. SZLATENYI *vs.* HELEN J. CLEVERLEY *et al.*

DECEMBER 12, 1946.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Capotosto, J. This bill in equity seeks to impress a resulting trust on certain real estate so that the complainant may be awarded the value of her dower right therein. No objection was made to the form of the bill. Following a hearing on bill, answer and proof, the trial justice denied and dismissed the bill on his findings on the evidence. The cause is before us on complainant's appeal from a final decree entered in accordance with that decision.

The complainant is the wife of the respondent Charles S. Szlatenyi. They had been living separate and apart for some time and a petition for divorce by the wife was pending in the superior court when she brought this bill. The respondent Helen J. Cleverley is the sister of Charles S. Szlatenyi and the other respondent, George R. Cleverley, is her husband.

The real estate in dispute consists of a house and thirteen lots of land in the city of Cranston. The material evidence for the complainant in substance was that her husband told her that he had bought the property; that he was the one who made a written application to a Providence bank for a mortgage of $2500; that, on June 21, 1943, or sixteen days after the execution of a deed to the property in the name of the respondent Helen J. Cleverley, he applied for and

was given electric service for the house on that property; that bills for such service were rendered and paid monthly in his name at that address, although he lived elsewhere, until the house was sold in January, 1944; that he personally did some repair work on the premises; that when, in the early winter of 1943, complainant asked permission to live in that house with her child he first refused and later told her that he had sold the property, and that he had a right to sell it because he had "put it in his sister's name."

The evidence for the respondents was substantially as follows: In the spring of 1943 Charles S. Szlatenyi intended to buy the premises in question for $3500, and he applied to a Providence bank for a mortgage loan of $2500. However, as divorce proceedings by the wife were then pending, he consulted his attorney as to the advisability of completing the transaction and, on the latter's advice, he decided not to buy the property because of the complications that would result if he purchased it.

Charles S. Szlatenyi thereafter brought the matter to his sister's attention and, as it seemed a good investment, she decided to buy the property for herself, he agreeing to assist her in making the purchase by lending her $1000, which was the required down payment. The transaction was completed at the bank on June 15, 1943, in the following manner. Charles S. Szlatenyi loaned his sister $1000, as he had promised, for the down payment; the sister took title to the property in her name alone; and she and her husband executed a mortgage for $2500 to the bank, which mortgage was based on the application hereinbefore mentioned. The payment of this mortgage note was guaranteed by the brother.

Respondents' evidence further shows that, after spending about $1700 in repairing the property, the Cleverleys, on January 25, 1944, sold the house and three lots for $5800, which sum was then distributed as follows: $2500 went to the bank in discharge of the mortgage; $1700 was taken out by the Cleverleys for repairs to the property; $1000 was

paid to Charles S. Szlatenyi in satisfaction of the loan of that sum to his sister; some $300 was paid for broker's commission, taxes and other incidental expenses; and the balance was retained by Helen J. Cleverley as the owner and seller of the property. Excepting the $1000 just above mentioned, Charles S. Szlatenyi received no other moneys from this sale. Pursuant to a consent decree entered in this cause, the remaining lots were sold for $1500, and this sum was deposited in the registry of the superior court pending the final disposition of the present proceedings.

On the conflicting evidence in this cause the trial justice, in a decision from the bench, found substantially as follows: First, that although Charles S. Szlatenyi at one time intended to buy the property, he subsequently "left it alone", definitely abandoning such intention upon the advice of counsel; second, that the respondent Helen J. Cleverley was the real purchaser of the property, the entire title thereto vesting in her alone; and, third, that Charles S. Szlatenyi loaned his sister, Helen J. Cleverley, $1000 to assist her in buying the property and for no other purpose.

In order for the complainant to prevail, the burden was upon her to prove by full, clear and convincing evidence— *Angell* v. *Angell,* 64 R. I. 264—that her husband personally or Helen J. Cleverley "to his use, was seized of an estate of inheritance, at any time during the intermarriage". General laws 1938, chapter 418, §1. A resulting trust arises by operation of law at the time when the estate passes. The establishment of such a trust in the instant cause depends upon proof of two facts: First, that Charles S. Szlatenyi paid the entire purchase price, or, in the alternative, that he contributed a portion of the purchase price with the definite understanding that he should have some aliquot part or interest in the property; and, secondly, that he, while directing or permitting the conveyance of the legal title to Helen J. Cleverley, as a nominal purchaser, intended to retain the beneficial interest for himself. *Cetenich* v. *Fuvich,* 41 R. I. 107; 42 A. L. R. 52 n.

As a general rule the use of borrowed money in making a purchase does not raise a resulting trust in favor of the lender, even where the money is loaned to enable the borrower to purchase the property in question. 54 Am. Juris., 163, §209. At this point we note that the *Cetenich* case, upon which the complainant strongly relies, is inapplicable to the instant cause because the factual situations in the two cases are entirely different. Whether or not there is a resulting trust must be determined, in most cases at least, by the facts of the particular case. The ultimate issue in the instant cause, therefore, depended on the determination of questions of fact from the conflicting evidence in this record.

Our examination of the transcript does not show that, in making his findings of fact, the trial justice overlooked or misconceived any material evidence. His conclusions from the conflicting evidence before him were therefore the result of his appraisal of such evidence, which, in the circumstances of this cause, depended to a considerable extent upon the credibility of the witnesses and the reasonable inferences to be drawn from their testimony. He had the advantage over us of seeing and hearing the witnesses while testifying. It is well established in this state that the decision of a trial justice, in the circumstances just above outlined, will not be disturbed by us unless clearly wrong. We can arrive at no such conclusion in this cause.

The complainant's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Fergus J. McOsker,* for complainant.

*Harold R. Semple,* for respondents.