**In the Matter of UNI–LAB, INC., Bankrupt.**
**No. 22492.**

United States District Court
W. D. Pennsylvania.
Dec. 30, 1959.

Walter A. Dart, Jr., Erie, Pa., for trustee.

T. P. Dunn, Erie, Pa., for landlord.

WILLSON, District Judge.

This matter is before the Court on the petition for review of York and Foster, Inc., a landlord, which complains of the orders made by the Referee relating to the amount and order of distribution of the funds of the bankrupt. The proceedings are pursuant to 11 U.S.C.A. § 67.

The certificate of the Referee, prepared in accordance with sub-section a(8), states that the following two questions are presented:

A. Whether the order of the referee dated July 10, 1959, allowing priority to the landlord's claim for rent in the sum of $2,674.34 as stipulated by the parties, but allowing light and power charges of $1,-408.76 and water rent of $74.58 as general claims only, and not part of the priority claim, is correct.

B. Whether the order of the Referee dated July 17, 1959, holding claims of secured creditors attached to proceeds of sale of the goods sub-ject to their security interests and should be paid ahead of the landlord's priority rent claim; that said rent claim is not a prior lien thereon, is correct.

The facts from which these questions arise can be briefly stated as follows: Uni-Lab, Inc., the bankrupt, is a Pennsylvania Corporation, having its principal place of business in this district, in Union City, Erie County, Pennsylvania. On September 1, 1955, the bankrupt executed a written lease for the term of five years with York and Foster, Inc., (hereinafter called landlord) whereby the bankrupt leased a portion of a building located at 55 Fourth Avenue, Union City, Pennsylvania. By the terms of the lease, the lessee was to pay a monthly rental and in addition and by virtue of another clause, was required to "pay for light, power, water and other facility charges used by the lessee." An attached rider which was incorporated by reference, specifically provided for the exercise of the landlord's right of distraint for rent in enumerated circumstances. It was the original understanding between the parties that a separate light and power meter be installed for the lessee, whereby it could pay its own power bills, but as there were two other tenants in the building and the landlord did not desire to have three meters installed, an arrangement was entered into by the tenants and the landlord whereby the utility bills covering the building would be paid monthly by Erie Wood Products, one of the tenants. Thereafter, each of the three tenants was required to pay his pro-rata share of this bill, according to a detailed schedule of charges. Subsequent financial difficulties ensued for the lessee, Uni-Lab, Inc., and after a proposed arrangement by the debtor was withdrawn, Uni-Lab, Inc. was adjudged a bankrupt on February 10, 1959. It nowhere appears in the findings of fact contained in the orders filed by the Referee on July 10, 1959 and July 17, 1959, nor in the stipulation entered into by the landlord and the trustee, as to whether the landlord had issued a warrant of

distraint for the delinquent rent prior to the institution of proceedings under the Bankruptcy Act. Although there is no such specific finding, it is uncontroverted that, in fact, there was no distraint by the landlord prior to bankruptcy.

Under the facts of this case, the landlord can be accorded preferential treatment he seeks only if he is within the provisions of Section 67, sub. b of the Act.[1] The question thus boils down to whether the unpaid landlord whose claim is unaccompanied by a distraint, is entitled to a preference within the meaning of Section 67, sub. b. The landlord contends that the Referee erred in concluding that the rental charges incurred prior to bankruptcy were not entitled to a preference and in effect, he maintains that he is a secured creditor within the meaning of Section 67, sub. b, and that his status as such is unimpaired by any of the provisions of the Bankruptcy Act, and specifically, Section 67, subs. a and b. To understand his contentions, it is helpful to have in mind the general underlying policy of the Act and the several sections therein involved which are designed to implement this policy.

 The general underlying theory of the Act is the equality of distribution of the funds of the debtor. Sampsell v. Imperial Paper Corp., 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293. In this connection, in order to create as large a fund as possible for distribution, the statute contains several provisions which are designed to invalidate certain transactions that have occurred prior to bankruptcy which have the effect of depleting this available fund.[2] Yet it must be borne in mind that pre-bankruptcy liens which are valid and subsisting according to the general applicable law are unim-

paired by bankruptcy unless forbidden by these specific provisions of the Act. This principal has been consistently recognized by the Supreme Court. City of Richmond v. Bird, 249 U.S. 174, 39 S.Ct. 186, 63 L.Ed. 543; Goggin v. Division of Labor Law Enforcement of California, 336 U.S. 118, 69 S.Ct. 469, 93 L.Ed. 543. Here we are specifically concerned with a proper application of Section 64, sub. a(5) and Section 67, sub. b. As it has been noted above, Section 67, sub. a implements the policy of creating as large a fund as possible for the general creditors by providing that liens obtained within four months of bankruptcy are invalid if—

(a) The bankrupt was insolvent when the lien was obtained;

(b) The lien was fraudulently sought and permitted.

Subdivision b of Section 67 protects the liens enumerated therein from the provisions of subdivision a by stating:

"(b) The provisions of section 60 of this act to the contrary notwithstanding, statutory liens in favor of employees, contractors, mechanics, landlords, or other classes of persons and statutory liens for taxes and debts owing to the United States or to any State or any subdivision thereof, created or recognized by the laws of the United States or of any State, may be valid against the trustee, even though arising or perfected while the debtor is insolvent and within four months prior to the filing of the petition initiating a proceeding under this title by or against him.

 At this juncture, it is helpful to bear in mind the nature of the land-

---

1. It is not clear from the record before the Court whether the claim for rent accrued within or without the four month period prior to bankruptcy. In either event, the question remains whether or not the landlord had a valid lien within the meaning of the provisions of the Act. It would appear from the stipulated amount of accrued rent due that the claim arose within the four month period prior

to bankruptcy with the result that in order for the landlord to be successful, his claim must be within the meaning of the provisions of section 67, sub. b of the Act. For this reason and for facility of treatment, the Court will proceed on this basis.

2. See section 60, subs. a & b, section 67, subs. a & d & section 70, subs. c & e.

lord's interest with regard to the unpaid rent where there has been no distraint. The common law rule still obtains in Pennsylvania and under this rule the lien of the landlord arises when a levy has been made under distraint proceedings. Shalet v. Klauder, 3 Cir., 34 F.2d 594; Hay v. Patrick, 3 Cir., 79 F.2d 407. After distraint under a landlord's warrant, a lien arises within the meaning of Section 67, sub. b.[3] Prior to the levy, the landlord has no lien but it might be said that the landlord's right to distraint on goods for rent is a right in the nature of a lien rather than a lien itself. Certain statutory modifications have been made relating to the common law rule of distraint but are not here relevant.[4]

▮▮▮ In this case there has been no distraint, so under the law of Pennsylvania the landlord has no valid lien. The question thus presented is whether the unpaid landlord whose claim is unaccompanied by distraint is entitled to a preference within the meaning of Section 67, sub. b. This Court concludes that he is not. For the purpose of this section, the mere right to distraint is not sufficient nor equivalent to a lien obtained by distraint. The statute is clear, unambiguous and explicit, and plainly states that what is being excluded from the effect of Section 67, sub. a is "statutory liens". To conform to the spirit and purpose of the Act it is necessary that this term be given a strict construction. The statute expressly refers to "liens" and no authority or valid reason has been advanced why this term should be expanded to include the unexercised right to obtain a lien. The conclusion must be that the landlord's claim does not fall within the provisions of Section 67, sub. b, and hence he is not entitled to the preferential treatment he here seeks.

The landlord relies, in support of his contentions, on three cases, the first from which he quotes is In re Mount Holly Paper Co., 3 Cir., 1940, 110 F.2d 220. This case is easily distinguishable because it was decided under sections of the Bankruptcy Act which are no longer enforced.[5] The second case upon which the landlord places reliance is In re Quaker City Uniform Co., 3 Cir., 1956, 238 F.2d 155. This case held that the postponement of a landlord's lien, which was superior under the Pennsylvania law to the lien of a chattel mortgagee, by necessary implication postponed the lien of the chattel mortgagee to a position behind the subordinated lien of a landlord who had distraint. This case is distinguishable, as is the Einhorn case, the third case upon which the landlord relies, from the case at bar, by the fact that in both of these cases, the landlord had issued a warrant of distraint prior to bankruptcy and hence had a lien within the meaning of Section 67, sub. b.

If any further support is necessary for the conclusion reached reference can be made to the provisions of Section 67, sub. c upon which the trustee relies. The relevant portions of § 67, sub. c state:

"(2) the provisions of subdivision (b) of this section to the contrary notwithstanding, statutory liens created or recognized by the laws of any State for debts owing to any person, including any State or any subdivision thereof, on personal property not accompanied by possession of, or by levy upon or by sequestration of distraint of, such property shall not be valid against the trustee;"

The ruling of this Court is in accordance with the ruling of Judge Van Dusen of the Eastern District of Pennsylvania, In re George Townsend Company, 180 F.Supp. 625, a copy of which has been furnished this court.

▮▮▮ The second objection raised by the landlord rests upon his contention

---

3. See 4 Collier, Section 67.23.

4. The common law rule has been modified to the extent of providing for a lien whenever property being upon the demised premises and liable to distraint is taken upon (39 P.S. § 96) (68 P.S. § 321) or sold by reason of bankruptcy.

5. See the recent Third Circuit Opinion, In the Matter of Einhorn Bros., Inc., 272 F. 2d 434.

that the term "rent" as used in the lease includes the charges incurred by the bankrupt for light, power and water. These items were excluded by the Referee in his determination of what constitutes rent. The question, under the facts of this case is, whether these items are properly excluded in determining what constitutes rent within the meaning of Section 64, sub. a(5). Under Section 64, sub. a(5), the landlord is accorded a fifth priority; the relevant provision stating,

> "debts owing to any person, including the United States, who by the laws of the United States in * * * entitled to priority, and rent owing to a landlord who is entitled to priority by applicable State law: Provided, however, That such priority for rent to a landlord shall be restricted to the rent which is legally due and owing for the actual use and occupancy of the premises affected, and which accrued within three months before the date of bankruptcy."

What constitutes rent within the meaning of the act thus involves a reference to the applicable state law.[6] A discussion of the Pennsylvania law on this subject can be found in a case relied upon by the landlord, Larsh v. Frank & Seder, 347 Pa. 387, 32 A.2d 219. In that case, under the terms of the lease, the lessee was required to pay the taxes, in addition to a monthly rental. The principles stated there have equal applicability to the contentions advanced with respect to the power, light and water charges in this case. There the Court stated, 347 Pa. at page 392, 32 A.2d at page 221.

> "Granting that taxes and similar charges lack a technical characteristic of rent, in that they are payable to third persons, and will not ordinarily be considered as rent, the rule is primarily one of construction, as the very cases relied upon demonstrate, and must give way to a contrary intention clearly expressed.

Thus in Evans v. Lincoln Co., 204 Pa. 448, 54 A. 321, 322, where the general rule was applied in construing an undertaking by the lessees 'to pay the rent * * * and that they will pay * * * [the] water taxes,' this Court said: 'We do not decide that the rent might not be reserved in such a manner as to include the water rent, and give the right to distraint for it. But in this case there was no such stipulation.' Here there is such a stipulation;"

It thus appears from this that attention must be directed to the terms of the lease to determine what the intention of the parties was at the time the lease was executed with respect to whether or not it was intended that the light, power and water charges be included as rent. The rule of construction to be applied in the absence of a clearly expressed intention that these charges constitute rent, is that such charges are not properly included as rent. Turning to the lease in the case at bar, paragraph two provides for the payment of the monthly rental of $769.23 for each month during the first thirteen months of the lease and for $1,000 per month for each and every month thereafter, for the period of the lease; paragraph four of the lease provides that the lessee is responsible for the payment of the light power, water and other facility charges which are used by the lessee. In contradistinction, in the Larsh case, article two of the lease prior to the amendments, was entitled "Rents" and after the second amendment, article two then read,

> "it (lessee) shall pay to the lessors * * * a minimum guaranteed rental as follows; * * * monthly, in advance * * * Five Hundred Three and 50/100 ($503.50) Dollars and in addition thereto all taxes covenanted to be paid by lessee as set forth in Article IV * * * and in addition all insurance premiums."

It is readily apparent that the clauses involved in the two cases relating to the payment of rent are dissimilar. The

6. See 3 Collier, Section 64.503 at page 2184.

clause in the Larsh case clearly spells out that taxes constitute rent, and it is upon this basis that the Court concludes that there is a stipulation whose effect is to take the case outside the operation of the general rule of construction. Thus the holding of the Larsh case does not rule this case, and indeed, it dictates that in the case at bar, the result is that these light, power and water charges are not "rent". This is so because the lease in the case at bar does not so specifically spell out that these items constitute rent, so that the result follows that the general rule of construction must be applied and the conclusion in the case at bar is that such items are not properly included in computing the amount of rent due which is accorded the fifth priority under Section 64. The landlord relies on an incorporated provision of a form rider which states;

"Lessee will without any previous demand therefore, pay the said specified rent at the times and in the manner above provided, also pay for all heat, light, gas and facility charges assessed against the said premises and in case of non-payment of said rent, or in case the leased premises shall be deserted or vacated, the lessor may enter the same, either by force or otherwise without being liable to any prosecution or action therefor, and may distrain for rent, and also relet * * * premises. * * *"

From this provision, the landlord concludes that his right of distraint includes the right to levy for the unpaid charges for light, power and water, and that thereby, the term rent includes such charges. This clause cannot provide the basis for this conclusion. The best that the landlord can make of this is that it provides for his right to distrain for rent but as to what is _ntended to be included within the term, rent, is not expressly spelled out in this provision, nor in any other provision of the lease. The conclusion must be that it was not error for the trustee to exclude these items in the computation of the rent due.