**Julie F. QUIGLEY and the First National Bank of Mobile as Co-Trustees Under the Will of S. B. Quigley, Deceased, Appellants,**

**v.**

**Hubert A. KIMBROUGH, Trustee in Bankruptcy of Hotz GMC Trucks, Inc., Bankrupt, Appellee.**

**No. 24537.**

United States Court of Appeals Fifth Circuit.

May 17, 1968.

J. Edward Thornton, Mobile, Ala., Thornton & McGowin, Mobile, Ala., of counsel, for appellants.

Ronald P. Slepian, Herbert P. Feibelman, Jr., Mobile, Ala., McDermott, Slepian & Feibelman, Mobile, Ala., of counsel, for appellee.

Before RIVES, GOLDBERG and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

Appellants exhort and entreat us to grant priority to a claim in bankruptcy for attorneys' fees as a component of rent, despite statutory explicitness to the contrary.

Hotz GMC Trucks, Inc. filed a voluntary petition in bankruptcy on December 18, 1964. On March 11, 1965, Julie F. Quigley and The First National Bank of Mobile, co-trustees (landlord), filed with the Referee a Proof of Claim for rent due on the premises occupied by the bankrupt during the months of July, 1964, through December, 1964. In this Proof of Claim the landlord asserted rights to either a landlord's lien or a priority payment for $4,400.00, the "rent" owed by the bankrupt. This amount included six monthly rentals of $650.00 each and attorneys' fees in the sum of $500.00. The Referee, in an order dated September 27, 1966, refused to recognize a lien securing any part of the $4,400.00. He granted priority of payment "for three months rent for use and occupancy of the premises for three months immediately preceding December 18, 1964, in the total amount of $1,950.-00." However, the remaining rentals (recomputed by the Referee to be $1,-577.81) and the $500.00 attorneys' fees were relegated to the status of a non-priority claim.

The landlord filed a Petition to Review the Referee's Order in the district court below, claiming error in the denial of priority to the $500.00 attorneys' fees. In an order filed December 8, 1966, the district court denied the petition and affirmed and adopted the ruling of the Referee. The landlord appeals. We affirm.

The landlord relies on the following paragraph in its lease with the bankrupt:

"In the event of employment of an attorney for the collection of any amount due hereunder, or for the institution of any suit for possession of said property, or for advice or services incident to the breach of any other condition of this lease by the lessee, or on account of bankruptcy proceedings by or against the lessee, or legal process being issued against the furniture and effects of the lessee, located upon the leased premises, or the leasehold interest of the lessee, the lessee agrees to pay and shall be taxed with a reasonable attorney's fee, which fee shall be a part of the debt evidenced and secured by this lease."

This paragraph, claims the landlord, establishes attorneys' fees as "rent" under the lease and thus qualifies such fees for priority treatment under Section 64 of

the Bankruptcy Act. That section reads in relevant part:

"§ 64. Debts which have priority

(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be * * * (5) debts other than for taxes owing to any person, including the United States, who by the laws of the United States is entitled to priority, and rent owing to a landlord who is entitled to priority by applicable State law or who is entitled to priority by paragraph (2) of subdivision (c) of section 107 of this title: Provided, however, That such priority for rent to a landlord shall be restricted to the rent which is legally due and owing for the actual use and occupancy of the premises affected, and which accrued within three months before the date of bankruptcy. As amended July 30, 1956, c. 784, § 1, 70 Stat. 725; July 28, 1959, Pub.L. 86–110, § 3, 73 Stat. 260; Sept. 25, 1962, Pub.L. 87–681, § 8, 76 Stat. 571; July 5, 1966, Pub.L. 89–495, § 2, 80 Stat. 268; July 5, 1966, Pub.L. 89–496, § 3, 80 Stat. 271."[1]

We note that the attorneys' fees were incurred during the three-month period preceding December 18, 1964.

Because the above statutory provision is the key to our present determination, we pause to view it in historical perspective. Section 64a(5) is a product of the 1938 Chandler Act. Before 1938 priority status was granted to "debts owing to any person, who by the laws of the States or the United States, is entitled to priority." As a result of this permissive policy, in the pre-Chandler bankruptcy era priorities were a melange and a potpourri. Moreover, the value of such deference to state law diminished with the increase in both the number and the inequality of state-sanctioned priorities. We quote from a House Report in support of the Chandler Act:

"For like reasons of policy, we have excluded, as indicated, all other state priorities. The necessity for doing so is obvious; many estates have been consumed, to the exclusion of creditors, by the ever-increasing classes of state priorities." Analysis of H.R. 12889, 74th Cong., 2d Sess. (1936) 201.

A later Report was more specific as to landlords' priorities:

"The statistics gathered by the Attorney General indicate that rent claims consume a very substantial portion of an estate, and in smaller estates not infrequently use up all of the funds. In some jurisdictions, where the rent has become a lien without the necessity of distraint before bankruptcy, the claim takes priority over all administration costs, including the costs of preserving the estate. Such a situation is inequitable. In section 67(c) a similar provision is made to cover the claims of landlords which by State law are made liens, as distinguished from priorities." House Report No. 1409 on H.R. 8046, 75th Cong., 1st Sess. (1937) 15–16.

The new Section 64 allowed only one state-created priority, that of rent. See Elliott v. Bumb, 9 Cir.1966, 356 F.2d 749, 754–755, cert. den., Schutzbank v. Elliott, 385 U.S. 829, 87 S.Ct. 67, 17 L. Ed.2d 66; In re Uni-Lab, Inc., W.D.Pa. 1959, 180 F.Supp. 176, 179–181, aff'd without consideration of the point in question, 3 Cir.1960, 282 F.2d 123. Moreover, such priority was itself severely restricted by the *proviso* to Section 64a(5). As stated in 6 Remington, Bankruptcy at 473–474 (§ 2858), and as quoted by the Referee below:

"A landlord's lien or priority rights could formerly, under the law of some of the states, include taxes, water rent, and other such charges which

---

1. 11 U.S.C.A. § 104 (Supp.1967). Section 64 has been amended since the institution of bankruptcy proceedings in the case at

bar; however, no changes are relevant to the current controversy.

the tenants had agreed to pay, provided undertaking of these obligations as part of the rent was clear from the lease, though not, according to most decisions, otherwise. Also includable in some states were unmatured rent, rent in advance, and rent due for a long period of time, even a year or more. Kentucky and Alabama statutes gave a lien even for future rent.

"It is very apparent that the direct objectives of the 1938 changes in Section 64a(5) and Section 67c, eliminating the former broad grant of priorities, under state statutes, granting priority to landlords' rent claims under state law only for three months' actual use and occupancy prior to bankruptcy, and paring down landlords' lien rights to a status behind expenses of administration and wage claims, with like restriction, except as against other liens, as to rental period and actual occupancy, was to put a stop to exorbitant protection afforded landlords by the statutes of some of the states as against the rights of equally deserving general creditors. Later decisions recognize and give full force to the legislative intent."

Similar analyses can be found at 3 Collier, Bankruptcy §§ 64.501 and 64.503.

The *proviso* to Section 64a(5) expressly restricts priority in both time (three months) and extent (use and occupancy), the latter of which controls the case at bar. In the landlord's brief the requirement of use and occupancy is summarily dismissed as merely limiting priority to payments due for "the bankrupt's use of the premises as contrasted to a possible liability under a lease where the bankrupt tenant had surrendered or abandoned or never been in possession of the premises under the lease." This description is too narrow

in scope. Section 64a(5) requires a payment to be occupancy-oriented rather than merely payment-oriented, and it is solecistic to say that attorneys' fees for tenant defaults are occupancy-oriented. They bear close resemblance to penalty payments, and, in fact, might even be described as indicia or perhaps forebodings of non-occupancy.

At least one Referee has denied rent priority for gas and electricity charges on the basis that they did not constitute charges for "actual use and occupancy." In re Windsor—p b r Manuf. Co., E.D.Pa. July 20, 1966, CCH #62 (summary at CCH, Bankruptcy Law Reporter, Decisions 1966–67 ¶ 61,875). We cite *Windsor* to show the latest interpretational direction given to Section 64a(5). We are not called upon to embrace all of the specifics of this interpretation in order to deny priority in the case at bar which presents *a fortiori* facts.

■ The Supreme Court has continually reminded us that "the broad purpose of the Bankruptcy Act is to bring about an equitable distribution of the bankrupt's estate" and that "if one claimant is to be preferred over others, the purpose should be clear from the statute." United States v. Embassy Restaurant, 1959, 359 U.S. 29, 31, 79 S. Ct. 554, 555, 3 L.Ed.2d 601, 603 (and cases cited therein). Exception to such presumption of non-priority may be found regarding debts owing to the United States, Com. of Massachusetts v. United States, 1948, 333 U.S. 611, 627, 68 S.Ct. 747, 92 L.Ed. 968, 979 (see especially fn. 26), but the history of landlord's priorities negates any similar exception.

■ We need not correlate the terms of the lease under consideration with the sparse authority as to what constitutes "rent."[2] Regardless of that determina-

2. See Miles Corp. v. Lindel, 8 Cir. 1939, 107 F.2d 729 ("Rent", under both Iowa and federal bankruptcy law, includes payments for taxes and special assessments which were stipulated as "additional rent" in a paragraph separate from the basic "rent" paragraph in the lease.); In re Uni-Lab, Inc., supra, 180 F.2d at 179–181 (Under Pennsylvania law payments are not "rent" unless clearly labeled as such, and so payments for light, power, and water did not constitute "rent" be-

tion, the attorneys' fees in question cannot possibly qualify as rent for "actual use and occupancy." The bare bones of tenant liability may be state definable, but any fleshing is restricted by the Act.

Affirmed.

cause they were listed in a paragraph separate from the basic "rent" paragraph in the lease. If they had been listed in the same paragraph, they probably would have been covered.); Cf. In re Bonwit, Lennon & Co., D.Md.1940, 36 F.Supp. 97, 100–102 (Under Section 63a(9) of the Bankruptcy Act "rent" is to be given a broad application which includes stipulated payments for taxes, despite the lack of reference to such payments as "rent" in the lease.)