**In the Matter of FABER'S, INC.**
**No. H–10857.**

United States District Court,
D. Connecticut.
May 16, 1973.

Eugene Berman, Springfield, Mass., for petitioner.

## MEMORANDUM OF DECISION ON PETITION FOR REVIEW

BLUMENFELD, District Judge.

Faber's, Inc., is a bankrupt retail carpet dealer with stores in Massachusetts and Connecticut. After adjudication of bankruptcy, forty-five consumers who had given cash deposits for undelivered carpets filed a petition to have a constructive trust or lien imposed upon the deposits. Imposition of such a trust would mean that the deposits would be excluded from the bankrupt's estate. Since trust property is exempt from the distributional rules of the Bankruptcy Act, 11 U.S.C. § 1 et seq., see 4A Collier on Bankruptcy (14th ed. 1971) para. 70.25 at 341–42 (hereinafter Collier), creating the trust would in effect grant the consumers a priority in the distribution of the bankrupt's present assets.

### I.

The result petitioners seek has considerable appeal on policy grounds. A recent law review article by two experienced consumer protection advocates thoroughly demonstrates the hurdles the law has placed in the path of the buyer who seeks recovery of deposits paid to a seller who has failed to deliver and has become bankrupt. See generally Schrag and Ratner, Caveat Emptor—Empty Coffer: The Bankruptcy Law Has Nothing to Offer, 72 Col.L.Rev. 1147 (1972) (hereinafter Schrag & Ratner). Neither traditional trust doctrine nor the Uniform Commercial Code is of any avail in safeguarding consumers' inter-

ests. Schrag & Ratner, 72 Col.L.Rev. at 1151–66. And under the Bankruptcy Act, they are unsecured creditors not entitled to any recovery from the bankrupt's estate until the statutory priorities, see 11 U.S.C. § 104, and the claims of secured creditors, 11 U.S.C. § 105(a), are satisfied. But consumers do not think of themselves as creditors, see Schrag & Ratner, 72 Col.L.Rev. at 1150 n. 17, and their ignorance of the law prevents them from taking legal measures to guard their interests. Unlike businessmen to whom the cost of such protection and the risk of loss in its absence are matters of basic and constant concern, consumers are unable to protect themselves from either the dishonesty or the insolvency of the seller. Cf. In re Kountze Bros., 79 F.2d 98, 102 (2d Cir.), cert. denied sub nom. Irving Trust Co. v. City of Los Angeles, 296 U.S. 640, 56 S.Ct. 173, 80 L.Ed. 455 (1935).

Petitioners urge that the plight of the prepaying buyer demands special judicial protection, and in their brief have suggested several legal theories under which they would receive preference in the apportionment of the bankrupt's estate. However, even acceptance of the justice of their argument would not advance their cause, for the federal courts are without power to provide a remedy in this situation.

## II.

█ █ Whether a trust has been established is generally a matter of state, not federal, law. See Jaffke v. Dunham, 352 U.S. 280, 281, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957); 4A Collier, para. 70.25 at 348. While, as petitioners contend, Connecticut law recognizes the equitable remedy of the constructive trust, see Worobey v. Sibieth, 136 Conn. 352, 355–56, 71 A.2d 80 (1949), that remedy is not invoked lightly. Its basis must be "fraud, actual or constructive." *Id.* at 356, 71 A.2d 80. Connecticut courts will find constructive fraud only when specific conditions are met. These are present in a small class of cases:

"Equity is much more prone to find such fraud in cases where property is bequeathed or devised to one upon his promise to deal with it in a certain way; Hanney v. Clark, 124 Conn. way; Hanney v. Clark [124 Conn. 140, at page 145, 198 A. 577, at page 579]; and that is illustrated by our cases of Dowd v. Tucker, 41 Conn. 197, 205, and Buckingham v. Clark, 61 Conn. 204, 209, 23 A. 1085. See McLaughlin v. Thomas, 86 Conn. 252, 258, 85 A. 370. Apart from such situations, we have said that the basis of such trusts may be found in 'fraud, misrepresentation, imposition, circumvention, artifice, or concealment, or abuse of confidential relations.' Verzier v. Convard, 75 Conn. 1, 4, 52 A. 255, 256; Reynolds v. Reynolds, [121 Conn. 153 at page 159, 183 A. 394, at page 396]." Worobey v. Sibieth, *supra*, 136 Conn. at 356, 71 A.2d at 81.

█ Petitioners' brief admits (at 7–8) that there are no Connecticut cases invoking a constructive trust to protect consumers. Indeed, they cannot point to any decision remotely suggesting that Connecticut courts would hold the conditions for a constructive trust present here. No less than in a case of diversity jurisdiction governed by the rule of Erie RR v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the role of a federal court applying trust law in a bankruptcy proceeding is rigidly circumscribed: its only task is to determine the law of the state in which it sits. It cannot create new law, however great the need may seem. Contrast Illinois v. City of Milwaukee, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972).

## III.

█ There is in addition a serious and difficult question of whether even duly promulgated state law can protect consumers in the situation presented in this case. The courts have consistently treated the distributional priorities created by the Bankruptcy Act as a paramount congressional policy which must

predominate in the face of conflicting state or even federal law. For example in United States v. Randall, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971), a court had ordered the debtor to open separate bank accounts for specified categories of its debts. It failed to open an account for its tax indebtedness, however, and later became bankrupt. The United States asked for payment of the tax indebtedness before money was allotted for expenses of administration, the first priority under the Act. 11 U.S.C. § 104(a)(1). It relied upon a statute, 26 U.S.C. § 7501(a), which imposes a trust on any funds required by law to be withheld or collected for payment of federal taxation. The Supreme Court held that notwithstanding the debtor's failure to segregate the funds—in violation of a court order—the "strong policy of § 64(a)(1) of the Bankruptcy Act," quoting Nicholas v. United States, 384 U.S. 678, 691, 86 S.Ct. 1674, 16 L.Ed.2d 853 (1966), must override the contrary provisions of the statute creating the trust. 401 U.S. at 517, 91 S.Ct. at 994.

Under the Supremacy Clause, U.S.Const. Art. VI, contrary provisions of state law must give way before the distributional requirements of the Bankruptcy Act. Section 64, 11 U.S.C. § 104 (a)(1)–(5), is quite explicit in its ordering of priorities, and recognizes only one state-created priority: rent. Quigley v. Kimbrough, 395 F.2d 100, 102 (5th Cir. 1968) and cases cited. There is plainly a tension between the Bankruptcy Act's recognition of trusts created by state law and its preclusion of state-created priorities, and threading their way between the two principles has been a difficult matter for the courts. The difficulties are illustrated by the leading case of Elliott v. Bumb, 356 F.2d 749 (9th Cir.), cert. denied sub nom. Schutzbank v. Elliott, 385 U.S. 829, 87 S.Ct. 67, 17 L.Ed. 2d 66 (1966). The California legislature

had declared that the money gained by an agent from the sale of money orders was to be held in a segregated fund in trust for his principal, and in addition impressed a trust upon all of the agent's assets if he commingled the proceeds of such sales with other funds. Relying primarily on the agency relationship and an agreement between the parties, see 356 F.2d at 753–54, the court held that funds which had been maintained in a separate account constituted a trust not part of the estate of the bankrupt agent. However, the statutory trust governing additional funds which the agent had commingled with monies of his own was held to be a disguised priority in conflict with the Bankruptcy Act. The court quoted with approval from 4A Collier, para. 70.25(2) at 363–64:

> "State trust law must not be allowed to pervert or override the distributive provisions of the Bankruptcy Act. A state rule which purports to fasten a general lien on a person's estate in the event of insolvency or a general liquidation must be regarded as a priority in disguise and incompatible with the order of distribution prescribed for bankruptcy. The adoption of § 64(a)(5) and § 67c of the Bankruptcy Act was intended to make clear that state rules of priority of distribution must yield in bankruptcy cases to that prescribed by the Act." Elliott v. Bumb, *supra*, 356 F.2d at 754.

How one determines when a provision of state law is a "disguised priority" presents a difficult question. Some courts have refused to apply state trust law if the effect of such application would be contrary to the Bankruptcy Act. See In re Lee, 468 F.2d 1249 (9th Cir. 1972), but see *id.* at 1251–52 (dissenting opinion). There is more support for the proposition that the absence of a tracing requirement [1] in the statutory

---

1. As described in 4A Collier, para. 70.25 (2) at 354–55, the requirement of tracing means that " . . . to sustain a claim to trust property or to an equitable lien thereon, the claimant must depend upon his ability to identify the property in its original or substituted form in the hands of the bankruptcy trustee." (Citations omitted). See also, G. Bogert, Trusts and Trustees (2d ed. 1962) §§ 921–23.

trust renders it an invalid attempt to create a state priority. Elliott v. Bumb, *supra*, 356 F.2d at 754–55; Lusk Corp. v. Arizona State Tax Commission, 462 F.2d 187 (9th Cir. 1972). However, United States v. Randall, *supra*, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273, as well as those two cases, suggests that even though the trustee has violated the statutory requirement by commingling the funds, if the beneficiary cannot identify his money[2] he will have to take his place at the end of the line behind those favored by the priorities set out in § 64(a). Thus, state legislative or judicial remedies for abuses suffered by consumers may well be nullified by the Bankruptcy Act. The paramountcy of federal statutory law in this area is the primary reason Schrag and Ratner urge congressional reform of the Act as the only effective way to protect consumers caught in the same plight as that of petitioners in the present case. See 72 Col.L.Rev. at 1187–91.

### IV.

In addition to the foregoing legal obstacles which prevent a federal court from granting the relief petitioners in this case have sought there was no requirement that Faber's, Inc., the bankrupt, segregate the deposits it had received from petitioners as prepaying buyers. The referee in bankruptcy reports that the deposits were not segregated, and that the deposits are no longer traceable. Certificate of Referee on Petition for Review at 4. Not only does the applicable law deny this court the power to grant the relief petitioners have sought, petitioners have also failed to demonstrate the existence of any funds that could be used to satisfy their request for imposition of a constructive trust or lien. Their motion to review is denied.

2. On the arcane rules governing the tracing requirement, and the insurmountable barrier they pose to the prepaying buyer attempting to recover his money, see Schrag & Ratner, 72 Col.L.Rev. at 1153–57.