**In re DEXTER BUICK—GMC TRUCK COMPANY, Debtor.**

**MARQUETTE CREDIT UNION, Plaintiff,**

v.

**James L. TAFT, Jr., Receiver, Defendant.**

**Bankruptcy No. BK–79–146.**

United States Bankruptcy Court, D. Rhode Island.

Feb. 7, 1980.

---

Normand T. Theriault, Soucy & Theriault, Inc., Woonsocket, R. I., for plaintiff.

Taft, McSally & McKenna, Providence, R. I., for defendant.

## MEMORANDUM OPINION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on the complaint of Marquette Credit Union to impress a trust on certain funds in the possession of the Receiver.

The facts are undisputed. On December 13, 1976, Leo E. Remillard financed the purchase of a 1977 Ford Econoline through the Marquette Credit Union, which was named as lienholder on the Certificate of Title. On or about May 4, 1979, Remillard sold the vehicle to Dexter Buick-GMC Truck Company for $834.31, the balance due Marquette on its financing note. At the time of the sale, Dexter issued a check to Marquette for $834.31, and in reliance on this act by Dexter, Marquette mailed the Certificate of Title to Dexter, releasing its lien on the vehicle. On May 9, 1979, Dexter filed a Petition for an Arrangement, and a Receiver was appointed. The Receiver stopped payment on the check in question, and the vehicle was later sold by the Receiver to a third party.

Marquette seeks to recover $834.31 from the Receiver. It bases this claim on several grounds: (1) that a resulting trust in the amount of $834.31 was established from the sale of the vehicle to Dexter; (2) that to allow Dexter to keep the $834.31 would result in Dexter's unjust enrichment; and (3) that equity and justice demand that the plaintiff be placed as nearly as possible in status quo.

The issues raised by Marquette are similar to those raised in *Roberts v. Taft*, 2 B.R. 251 (D.C.1980) decided January 18, 1980, which involved a complaint to impose a constructive trust upon cash deposits made by customers of Dexter for undelivered automobiles, sales tax, and registration fees. In that decision, where a trust was not established, we held that the role of a federal court in applying trust law is limited to a determination of the law of the state in which it sits. See *Jaffke v. Dunham*, 352 U.S. 280, 281, 77 S.Ct. 307, 308, 1 L.Ed.2d 314 (1957); *In re Faber's, Inc.*, 360 F.Supp. 946, 948 (D.Conn.1973). Although

Marquette's complaint alleges the creation of a resulting trust, not a constructive trust, whether such a trust has been established remains a matter of state, and not federal law.

Under Rhode Island law, the establishment of such a trust requires clear and convincing evidence that at the time of the conveyance it was the intent of the parties that beneficial ownership was to remain in the possession of the transferor of the property. *See, Cutroneo v. Cutroneo*, 81 R.I. 55, 59, 98 A.2d 921, 923 (1953); *see also, Szlatenyi v. Cleverley*, 72 R.I. 253, 50 A.2d 185 (1946). There is no such evidence in this case. The second and third grounds in Marquette's complaint are also without merit, and are dismissed as reasons for granting the relief requested.

While Marquette would not prevail on the arguments discussed above, we feel independently that this dispute should be reconciled in Marquette's favor under 9–306(2) of the Uniform Commercial Code,[1] which provides that a security interest in collateral, and proceeds from the sale of the collateral, continues unless its sale or exchange has been authorized by the secured party. Although Marquette did release its lien on the secured property, it is clear that it did so only because it had received full payment of its debt. Since Marquette's release of its security interest was conditional on payment, the effect of the later dishonoring of the check was to revive Marquette's security interest in the vehicle. As UCC 3–802(1)(b) states:

"Unless otherwise agreed where an instrument is taken for an underlying obligation . . . (b) . . . the obligation is suspended pro tanto until the instrument is due or if it is payable on demand until its presentment. *If the instrument is dishonored action may be maintained on either the instrument or the obligation* . . . ." (emphasis added)

Accordingly, since the condition requiring Marquette to release its lien was not fulfilled, *see Mansion Carpets Inc. v. Marinoff*, 24 A.D.2d 947, 265 N.Y.S.2d 298 (1965), the secured party's interest continued in the vehicle and followed the proceeds.

A clearly analogous case is *In re Hayman*, 6 UCC 928 (Bank.Ct., W.D.Okla.1969). Hayman, prior to bankruptcy, endorsed to and cashed a check at a tire company which held a security interest in certain merchandise it had previously sold to Hayman. The tire company deducted the amount of its secured claim and remitted the balance of the check to Hayman in cash. Payment was later stopped on the check. The court held that the tire company was an unsecured creditor as to the amount it had paid to Hayman in excess of its security interest, but found that the effect of the dishonored check was to revive the creditor's security interest in the merchandise previously sold to Hayman. The court reasoned that

"There is an implied understanding that a check will be paid, and a receipt issued therefor is likewise conditioned upon the ultimate payment of the check . . .
Thus when payment on the personal check therein was stopped, the account which had been credited as paid reverted by operation of law, to its status at the time the personal check was presented to satisfy the account. Consequently, Oklahoma Tire and Supply Company is a secured creditor to the extent of $63.00, the unpaid balance on the account protected by the valid filing." *Supra* at 929.

Based upon the language of UCC 9–306(2) and UCC 3–802, and the persuasive reasoning of *In re Hayman*, we conclude that Marquette Credit Union has a perfected security interest in the secured property which followed the proceeds from the sale of the vehicle by the Receiver.

This memorandum constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

---

1. For convenience, we refer hereafter solely to the Uniform Commercial Code (U.C.C.) rather than to the Rhode Island statute adopting the U.C.C., Title 6A R.I. General Laws (1969 Reenactment).